RUSS, AUGUST & KABAT
Marc A. Fenster (SBN 181067)
Email: mfenster@raklaw.com
Reza Mirzaie (SBN 246953)
Email: rmirzaie@raklaw.com
Paul A. Kroeger (SBN 229074)
Email: pkroeger@raklaw.com
Neil A. Rubin (SBN 250761)
Email: nrubin@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California  90025
Telephone: (310) 826-7474
Facsimile:   (310) 826-6991

**Attorneys for Plaintiff Oyster Optics, LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **OYSTER OPTICS, LLC,**<br><br>                    **Plaintiff,**<br><br>          vs.<br><br>**CIENA CORPORATION,**<br><br>                    **Defendant.** | CASE NO. 4:20-cv-02354-JSW<br><br>**PLAINTIFF OYSTER OPTICS LLC'S OPENING CLAIM CONSTRUCTION BRIEF** |

**TABLE OF CONTENTS**

PAGE(S)

I. INTRODUCTION ................................................................. 1

II. BACKGROUND OF THE PATENTS-IN-SUIT ............................ 2

A. Transceivers Digital Data On Light Waves Using Modulation ..................... 2

III. CLAIM CONSTRUCTION PRINCIPLES ............................... 4

IV. AGREED CONSTRUCTIONS ............................................. 5

V. DISPUTED CONSTRUCTIONS FOR THE PATENTS-IN-SUIT ................ 5

A. "phase modulate" and variants thereof ('500 Patent, Cl. 1, 17, 8, 19); ................. 5

B. "phase-modulated optical signals" ('500 cl. 1, 16)) ............................... 8

C. "amplitude-modulating" and variants thereof ('500 cl. 1, 16, 17)................... 9

D. "a receiver having an interferometer" ('500 Patent cl. 16).................... 9

E. "laser directly adjacent the phase-modulator" ('500 Patent cl. 8) ................... 11

F. "energy level circuit" / "energy level detector" ('297 patent cl. 1, 17) .............. 12

Plain and ordinary meaning. The claim limitations are not means-plus function. .......... 12

In the alternative, if the terms are subject to 35 U.S.C., sixth paragraph: ...................... 12

G. "control electronics to provide control signals, in accordance with the data stream, to the laser" ('297 patent cl. 14)............................................. 15

H. "a low pass filter coupled to the output of the photodector" ('297 patent cl. 18) .......................................................................................... 18

I. "a low pass filter coupled to the output of the photodector" ('297 patent cl. 18) .......................................................................................... 19

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*,
340 F.3d 1298 (Fed. Cir. 2003)..................................................................7

*Apex, Inc. v. Raritan Comp., Inc.*
325 F.3d 1364 (Fed. Cir. 2003).................................................................15

*Apex, Inc. v. Raritan Comp., Inc.*,
325 F.3d 1364 (Fed. Cir. 2003).................................................................13

*Epistar Corp. v. ITC*,
566 F.3d 1321 (Fed. Cir. 2009)..................................................................4

*Intel Corp. v. VIA Techs.*,
319 F.3d 1357 (Fed. Cir. 2003).................................................................16

*JVW Enters. v. Interact Accessories, Inc.*,
424 F.3d 1324 (Fed. Cir. 2005).........................................................1, 5, 10

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
244 F.3d 1365 (Fed. Cir. 2001)..................................................................4

*O2 Micro Int'l v. Beyond Innovation Tech.*,
521 F.3d 1351 (Fed. Cir. 2008 ..................................................................4

*Omega Engineering, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003)..................................................................5

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)...........................................................4, 7, 9

*SanDisk Corp. v. Memorex Prods.*,
415 F.3d 1278 (Fed. Cir. 2005)..................................................................1

*SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*,
336 F.3d 1298 (Fed. Cir. 2003)..................................................................7

*Tandon Corp. v. U.S. Intern. Trade Commn.*,
831 F.2d 1017 (Fed. Cir. 1987)..................................................................7

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
612 F.3d 1365 (Fed. Cir. 2010)............................................................16, 18

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002).............................................................4, 11

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002)..................................................................4

*Thorner v. Sony Computer Entertainment Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012)..............................................................4, 8

*United States Surgical Corp. v. Ethicon, Inc.*,
103 F.3d 1554 (Fed. Cir. 1997)..................................................................4

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015)...............................................13, 14, 16, 17

# I.     INTRODUCTION

Plaintiff Oyster Optics LLC ("Oyster") respectfully submits this opening claim construction brief. Oyster proposes constructions that are faithful to the plain and ordinary meaning of the claim terms to one of ordinary skill in the art. In each instance, Oyster's proposals are fully consistent with the intrinsic record, including, most notably, the claim language itself. Where necessary, Oyster's proposals likewise are supported by the sworn opinion of optics and telecommunications expert Dr. Keith Goossen, who explains precisely how a POSITA would understand each claim term, particularly in light of the intrinsic record.

Indeed, in many cases, the disputed phrases and terms are similar to terms recently construed by this Court in *Oyster Optics, LLC v. Ciena Corporation*, Case No. 4:17-cv-05920, Dkt. No. 127. Ex. A[1] ("*Ciena I* Claim Construction Order"). Further, with respect to the '500 Patent, most of disputes are identical to those that have already been construed by Magistrate Judge Roy S. Payne in a related case— *Oyster Optics v. Infinera Corporation, et al.*, Case No. 2:19-CV-00257-JRG (E.D. Tex. July 23, 2020). Ex. B ("*Infinera* Claim Construction Order").

Where the terms have been previously construed, either by this Court or the Eastern District of Texas, the issued constructions are precisely the ones offered by Oyster—and rejected by Defendant Ciena Corporation ("Ciena") now. In short, Oyster's claim-construction methodology and proposals are consistent with the factual record and controlling law.

Ciena's proposals, on the other hand, are inconsistent with the intrinsic record and in conflict with controlling law. Ciena repeatedly seeks to burden clear and ordinary terms with artificial and extraneous baggage, but cannot point to any disclaimer or lexicography to do so. This invites reversible error. *E.g.*, *JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005). Indeed, many of Ciena's narrow proposals are inconsistent with the intrinsic record— and even *exclude* embodiments taught in the specifications of the patents-in-suit. As the Federal Circuit has repeatedly held, such constructions are "rarely, if ever, correct." *SanDisk Corp. v. Memorex Prods.*, 415 F.3d 1278, 1285-86 (Fed. Cir. 2005). For other proposals, Ciena's proposed

---

[1] All Exhibits are attached to the concurrently filed declaration of Reza Mirzaie.

**PLAINTIFF OYSTER OPTICS LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

constructions are inconsistent with the language in the claim itself. This is also improper under controlling law.

## II.   BACKGROUND OF THE PATENTS-IN-SUIT

This case involves two patents: U.S. Patent No. 10,554,297 (the "'297 Patent") (Ex. C) and U.S. Patent No. 6,665,500 (the "'500 Patent") (Ex. D). The '297 patent is related to the three patents this Court construed in the *Ciena I* Claim construction Order: U.S. Patent Nos. 8,620,327 (the "'327 patent"); 8,374,511 (the "'511 patent"); and 8,913,898 (the "'898 patent"). The '297 Patent is continuation of both the '327 and '511 patents. Although it does not claim priority to the '898 Patent they are "sibling" patents as the '898 also claims priority to the '327 and '511 patents.

The '500 patent is not related the patents previously construed by this Court. However, all of the patents share a common inventor and concern as the same general area of technology.

The asserted patents cover numerous innovations in optical telecommunications network technology. And they are generally directed towards systems and methods for transporting information by modulating light waves transmitted and received across transparent optical fibers. Each of the claimed systems and methods demonstrates a significant advancement over the state of the art, as they facilitate novel ways of providing a more rapid, secure, and reliable communication of enormous quantities of data over great distances.

### A.   Transceivers Digital Data On Light Waves Using Modulation

The Court is familiar with the concepts of phase modulation and amplitude modulation from the prior litigation, so this introduction to these concepts will be brief.

Modern high speed telecommunications network systems use light waves for digital data transmission. Transmitters and receivers are important components of these systems, because they perform key aspects of the encoding, transmitting, receiving and decoding functions for optical signals. In an optical telecommunications network, a transmitter transmits signals from one location to another location, where a receiver receives the optical signals. *See* '500 patent at 1:13–22.

**PLAINTIFF OYSTER OPTICS LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

A light wave is defined by various properties including amplitude and phase. When depicted as in the figure below, amplitude can be understood as the height of the wave, and phase as the position of the wave at a fixed point in time.



For digital data transmission, one or more of these wave properties can be modified to represent each of two possible binary values (0 or 1). For phase modulation, this is often depicted as a relative displacement such that the peaks and troughs occur at different times. The figures below show how either amplitude or phase can be modulated to communicate a digital 0 or 1:



Combining modulation strategies allows for the loading of even more information on a single carrier wave. For example, a single wave can be phase- *and* amplitude-modulated so that it can convey two different streams of digital data on the same carrier light wave. This is depicted in the below figure:



PLAINTIFF OYSTER OPTICS LLC'S OPENING CLAIM CONSTRUCTION BRIEF

III.  **CLAIM CONSTRUCTION PRINCIPLES**

The "claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002).

When conducting a claim construction inquiry, "district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro Int'l v. Beyond Innovation Tech.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). This is because claim construction is "not an obligatory exercise in redundancy." *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Where a term is used in accordance with its plain meaning, the court should not re-characterize it using different language. *See Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed. Cir. 2001) ("[T]he court properly instructed the jury that these terms should receive their ordinary meanings.").

To the contrary, there is a "heavy presumption" that claim terms carry their "full ordinary and customary meaning, unless [the accused infringer] can show the patentee expressly relinquished claim scope." *Epistar Corp. v. ITC*, 566 F.3d 1321, 1334 (Fed. Cir. 2009). And because "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention," the task of comprehending the claims often "involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1313-14.

"There are only two exceptions" in which claim terms are not given their "full ordinary and customary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution."). *Thorner v. Sony Computer Entertainment Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular terms." *Phillips,* 415 F.3d at 1314. And the other parts of the intrinsic record also shed light on the meaning of claim terms. *Id*. However, without clear and unambiguous disclaimer or lexicography by the patentee, courts "do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific

4

embodiments of the invention or even describes only a single embodiment." *JVW Enters.*, 424 F.3d at 1335. Similarly, statements during patent prosecution do not limit the claims unless the statement is a "clear and unambiguous disavowal of claim scope." *Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003) ("[W]e have thus consistently rejected prosecution statements too vague or ambiguous to qualify as a disavowal of claim scope.").

## IV.  AGREED CONSTRUCTIONS

Oyster and Ciena have agreed to the following constructions:

| U.S. Patent 6,665,500 | |
|---|---|
| "the input data stream" ('500 Patent – cl. 2) | "the electronic data stream" |

| U.S. Patent 10,554,297 | |
|---|---|
| "an optical receiver" ('297 Patent – cls. 1, 17) | "an optical receiver without a demodulator" |

## V.  DISPUTED CONSTRUCTIONS FOR THE PATENTS-IN-SUIT

### A.  "phase modulate" and variants thereof ('500 Patent, Cl. 1, 17, 8, 19);

| Oyster's Proposed Construction | Ciena's Proposed Construction |
|---|---|
| "phase modulate" means "alter the phase of light to create an optical signal having a phase that is representative of data" | Claim 1, 8<br>a device that alters the phase of light to create an optical signal having a phase that is representative of data. The phase modulator does not perform amplitude modulation.<br><br>Claim 17, 19<br>altering the phase of light to create an optical signal having a phase that is representative of data, wherein the phase modulating does not include amplitude modulating. |

The parties agree that phase modulation requires "alter[ing] the phase of light to create an optical signal having a phase that is representative of data," The sole dispute is whether the construction of phase modulation should exclude use of "amplitude modulation," as proposed by Ciena. This exact dispute was recently presented to the Eastern District of Texas, which ruled in

Oyster's favor. Ex. B, *Infinera* Claim Construction Order as 7-15. The dispute is similar to that decided by the Court concerning the use of "phase modulation" in the claims of the patents asserted in the prior case, but involves different uses of phase and amplitude modulation based on the teaching and claims of the '500 patent.[2]

Specifically, in the context of the '500 patent, phase modulation and amplitude modulation are not mutually exclusive. They can both be used by the same system, and indeed at exactly the same time. This is stated explicitly and clearly in the "Summary of the Present Invention" section of the patent, which states:

> *The present invention* thus permits a phase-modulated transmission mode or an amplitude-modulated transmission mode, *or both a phase and amplitude modulated transmission mode*, which can permit the transmitter to work with different types of receivers.

'500 patent at 2:41–47 (emphasis added). A construction of "phase modulate" that "excludes" amplitude modulation, as proposed by Ciena, is contrary to this explicit disclosure of a "both a phase and amplitude modulated" mode.

The summary section goes on to describe a "second mode" where the light is amplitude modulated (*id.* at 2:63–64) and where "the optical signal may or may not also be phase modulated" (*id.* at 3:1–3). The specification also describes other ways of combining phase modulation with amplitude modulation, including in an "alternating stream" or a "mixed" signal. *Id.* at 3:27–30, 3:47–50, 3:62–64, 4:35–42. Magistrate Payne, in construing the claims, found that specifically found that the teaching a "'specialized receiver,' which 'can read a *mixed* optical signal of both phase-modulated and direct and delayed amplitude-modulated signals'" undercut the argument that phase modulation should exclude amplitude modulation. Ex. B, *Infinera* Claim Construction Order at 10.

---

[2] In the prior litigation, Oyster contended that "phase modulate" and "phase modulator" as used in the claims of the '327, '511, and '898 patents meant "alter the phase of light to create an optical signal having a phase that is representative of data. Use of phase modulation excludes use of amplitude modulation." Ciena contented the terms should be construed as "alter the phase of light while keeping the amplitude of light constant to create an optical signal having a phase that is representative of data." The Court resolved the dispute with the construction "alter the phase of light without substantially altering amplitude to create an optical signal having a phase that is representative of data. 'Substantially altered' means that amplitude changes are detectable by the energy level detector." Ex. A, *Ciena I* Claim Construction Order at 20.

6

These combinations of phase modulation and amplitude modulation are not just described in the specification, but also expressly claimed. Each of the independent claims 1, 10, 11, 16, and 17 requires the use of both phase modulation and amplitude modulation. Some claims require that they both be used in a single mode. For example, claim 19 claims a "second alternate transmission mode" wherein "the light is *both* amplitude-modulated *and* phase-modulated." '500 patent at 10:26–28 (emphasis added).

Ciena's proposed construction both excludes preferred embodiments and renders claims such as claim 19 incomprehensible. It cannot be that the term "phase modulate" in the context of the '500 patent "excludes" amplitude modulation, when the patent discloses and claims modes that utilize both phase modulation and amplitude modulation simultaneously. Accordingly, Ciena's proposed construction must be rejected. *See Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) (construction that excludes a preferred embodiment "is rarely, if ever correct"); *Phillips*, 415 F.3d at 1314 ("the claims themselves provide substantial guidance as to the meaning of particular terms.").

Ciena's proposed construction must also be rejected under the doctrine of claim differentiation. Claim 18 claims a "first transmission mode" that is phase-modulated but is "not amplitude-modulated." *Id.* at 10:14–16, 10:22–25. If "phase modulate" in the context of the '500 patent necessarily excluded amplitude modulation, then claim 18 and its requirement that the light "is not amplitude-modulated" would be superfluous, having exactly the same scope as the parent claim 17. *Tandon Corp. v. U.S. Intern. Trade Commn.*, 831 F.2d 1017, 1023 (Fed. Cir. 1987) ("To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant."); *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1303 (Fed. Cir. 2003) (claim differentiation "is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim."). The Eastern District of Texas found "the doctrine of claim differentiation bolsters Oyster's position on this record." Ex. B, *Infinera* Claim Construction Order at 11.

In the absence of clear and unambiguous disclaimer or lexicography by the patentee, the term must be given its full ordinary and customary meaning. *Thorner*, 669 F.3d at 1365. There is nothing in the specification or file history of the '500 patent that constitutes clear and unambiguous disclaimer or lexicography that would permit narrowing the term from this plain meaning and excludes the use of amplitude modulation.

Ciena  may argue (as did the Defendants in the Eastern District of Texas litigation) that the "phase modulation" in the '500 patent is limited because it incorporates the application that lead to the '055 patent by reference. '500 patent at 2:51–56, 3:6–11; Ex. F ('055 Patent). The '816 patent is a continuation-in-part of the '055 Patent, and was construed by the Eastern District of Texas to use phase modulation that excludes amplitude modulation. Accordingly, the Defendants may argue that the same construction applies here. In construing this term, Magistrate Payne rejected the argument that the mere incorporation by reference of the '055 Patent called for a claim construction that excluded phase modulation:

> ***[T]here are key differences between these patents that do not support Defendants' conclusion.*** First, contrary to Defendants' assertion, the thrusts of the two patents are fundamentally different. ***Whereas the '055 Patent is specifically directed to a "secure fiber optic data transmission system," '055 Patent at (54) (emphasis added), the '500 Patent concerns compatibility between different types of transmitters and receivers….*** True, the '500 Patent acknowledges the security benefits and drawbacks of phase- and amplitude-modulation, but only to explain the underlying problem—lack of compatibility between transmitters and receivers that use these different types of modulation. ***Second, unlike the '500 Patent, the '055 Patent does not disclose an amplitude modulator…. Third, the independent claims of the '055 Patent specifically exclude a signal that is both phase- and amplitude-*modulated**… These material differences defeat any argument that Oyster's proposed construction is inconsistent with either its other patents or with the Court's prior construction of "phase modulate."

Ex. B, *Infinera* Claim Construction Order at 13-14 (emphasis added)

For these reasons, the Court should adopt Oyster's construction.

### B.   "phase-modulated optical signals" ('500 cl. 1, 16))

| Oyster's Proposed Construction | Ciena's Proposed Construction |
|---|---|
| "phase modulate" means "alter the phase of light to create an optical signal having a phase that is representative of data" | "optical signals having a phase that is representative of data. The amplitude of the optical signals is not representative of data" |

PLAINTIFF OYSTER OPTICS LLC'S OPENING CLAIM CONSTRUCTION BRIEF

These terms present the same dispute as "phase modulate" described above—whether the phase modulated optical signals must exclude the use of amplitude modulation (i.e. whether amplitude modulation can be "representative of data"). Oyster's construction should be adopted for the same reasons. Optical signals that are phase modulated otherwise requires no construction.

### C.    "amplitude-modulating" and variants thereof ('500 cl. 1, 16, 17)

| Oyster's Proposed Construction | Ciena's Proposed Construction |
|---|---|
| "altering the amplitude of light to create an optical signal that is representative of data" | "altering the amplitude of light to create an optical signal having an amplitude that is representative of data. The use of amplitude modulation does not include phase modulation" |

Oyster's construction of amplitude modulation should be adopted for the same reasons concerning the construction of phase modulation. Just as phase modulation does not exclude amplitude modulation, amplitude modulation does not exclude phase modulation. As noted above, this is stated explicitly and clearly in the "Summary of the Present Invention" section of the patent, which states:

> *The present invention* thus permits a phase-modulated transmission mode or an amplitude-modulated transmission mode, *or both a phase and amplitude modulated transmission mode*, which can permit the transmitter to work with different types of receivers.

'500 patent at 2:41–47 (emphasis added). Accordingly, for all of the reasons set forth above with regard to phase modulation, Oyster's construction should be adopted.

### D.    "a receiver having an interferometer" ('500 Patent cl. 16)

| Oyster's Proposed Construction | Ciena's Proposed Construction |
|---|---|
| "a receiver having a device that performs a measurement using the interference phenomena produced between one of more signal beams of light and one or more reference beams of light" | "a receiver having a device that splits received light into a first wave and a second wave, delays the first wave relative to the second wave, recombines the delayed first wave and the second wave, and detects an intensity of the recombined waves" |

Ciena's proposed construction should be rejected as an improper attempt to import the limitations from an embodiment taught by the specification into the claims. *Phillips,* 415 F.3d at 1314 (without clear and unambiguous disclaimer or lexicography by the patentee, courts "do not

import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment." *JVW Enters.*, 424 F.3d at 1335. Each of Ciena's imported limitations, (1) splitting waves into two waves: (2) delaying the first wave relative to the second wave; (3) recombining the waves; and (4) detecting an intensity of the recombined waves, is an attempt to read limitations into the definition of "interferometer" based on how the specific interferometer used in the embodiment taught by the patent operates. *See* '500 Patent at 4:44-47, 5:51-62, 6:20-39, 6:53-7:39. However, nothing in the '500 Patent disclaims the use of interferometers with only those features or disavows any claim scope concerning interferometers.

While the '500 patent provides that its receiver is "compatible with" certain transmitters, including the transmitter from the '055 Patent ('500 patent at 6:21-26), it does not teach that its receiver must be identical that used in the '055 patent or that its invention requires any particular kind of interferometer. *See* Ex. C, Goossen Del., ¶23. Moreover, the specification expressly describes alternatives to the receiver used in the '055 patent. '500 patent at 5:51-62.

Moreover, as described in the attached declaration of Dr. Keith Goossen, a person of skill in the art would not understand "interferometer" to be limited to the specific embodiment taught by the '500 patent. As Dr. Goossen explains, a person of skill would understand that "'interferometer' involves interference based on the name alone," and that the "'-meter part' of the name requires something must measure." Ex. C, Goossen Decl., ¶¶42-43. Since the '500 patent states that the "interferometer" is "for reading the phase-modulated signals" ('500 patent at 3:50-51), "it would be clear that the '500 patent lpaced no additional constraints on what the interferometer need consist of." Ex. C, Goossen Decl., ¶43.

The extrinsic evidence, including the Handbook of Optics cited by Ciena, supports Oyster's construction that that all optical interferometers make measurements "using the interference phenomena produced by light waves." Ex. G, Handbook of Optics at 21.1. Moreover, the treatise describes that the interference is between a signal beam and a reference beam as used in Oyster's construction. Ex. G, Handbook of Optics at 21.8. *See also* Ex. C, Goossen Decl., ¶¶ 33-35.

**PLAINTIFF OYSTER OPTICS LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

Ciena's construction, by contrast, reads in limitations of only using two beams, "splitting" and "delaying" the light. As explained in Dr. Goossen's declaration, a Person of Skill in the Art was aware of interferometers that did not perform these actions. For example, the Handbook of Optics describes many examples of "multiple-beam interferometers." Ex. C, Goossen Decl., ¶ 37; Ex. G, Handbook of Optics at 21.2, 21.8. It likewise describes stellar interferometers which contain no splitters and no delays of light. Ex. C, Goossen Decl., ¶38; Ex. G, Handbook of Optics at 21.22.

Accordingly, a person of skill in the art would understand that an interferometer is far broader than just the embodiment disclosed in the '500 Patent. For this reason, the Court should rejected the narrow construction urged by Ciena, and adopt Oyster's broader construction.

**E.**   **"laser directly adjacent the phase-modulator" ('500 Patent cl. 8)**

| Oyster's Proposed Construction | Ciena's Proposed Construction |
|---|---|
| Plain and ordinary meaning. | "laser is next to the phase-modulator with no component in-between" |

The "claim construction inquiry ... begins and ends in all cases with the actual words of the claim." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). Indeed, where a term is used in accordance with its plain meaning, the court should not replace it with different or additional language. *Thorner*, 669 F.3d at 1366-67 ("we do not redefine words. Only the patentee can do that.").

Ciena's construction improperly seeks to replace the plain English words of "directly adjacent" with "next to" and add in the negative limitation "with no component in-between" the laser and phase modulator." Ciena's construction fails under controlling law. "There are only two exceptions" in which claim terms are not given their full ordinary and customary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner*, 669 F.3d at 1365. Ciena cannot meet its burden of showing either exception applies, because it does not. Indeed, the Federal Circuit has warned that courts "do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a

11

specification describes very specific embodiments of the invention or even describes only a single embodiment." *See JVW Enters.,* 424 F.3d at 1335.

Ciena's lone intrinsic evidence for its construction, '500 patent at 4:61-64, falls far short of establishing either that patentee set out its own special definition of "directly adjacent" or a disavowal of claim scope. This portion of the specification reads: "Light emitted from laser 12 passes through a phase modulator 16 . . . directly next to or part of the same package as laser 12." '500 Patent at 4:61-64. Nothing herein shows any reason for replace the plain English terms "directly adjacent" with "next to." And certainly, nothing herein supports the negative limitation "with no component in-between" as Ciena proposes. Ciena's construction should be rejected, and the term should be left to its plain and ordinary meaning.

**F.** **"energy level circuit" / "energy level detector" ('297 patent cl. 1, 17)**

| Oyster's Proposed Construction | Ciena's Proposed Construction |
|---|---|
| Plain and ordinary meaning. The claim limitations are not means-plus function.<br><br>In the alternative, if the terms are subject to 35 U.S.C., sixth paragraph:<br><br>**Structure:**<br>a photodetector, an amplifier, and a comparator, or equivalents thereof. *See, e.g.*, 297 at 2:50-51; 3:30; 3:66-67; 5:40-46; 5:51-67; 6:3-16; Fig. 3.<br><br>**Function:**<br>detecting an energy level of the optical data signal. *See, e.g.*, 297 patent at 3:30-37; 5:20-21; 40-46. | The claim limitations "energy level circuit" and "energy level detector" invoke 35 U.S.C. § 112, sixth paragraph.<br><br>**Structure:**<br>a circuit on the circuit board that includes a photodetector, an amplifier, and a comparator. *See, e.g.*, 297 at 2:50-51; 3:30; 3:66-67; 5:40-46; 5:51-67; 6:3-16; Fig. 3 (circuit 33 having photodetector 153, amplifier 155, and comparator 156 and/or 157).<br><br>**Function:**<br>detecting an energy level of the optical data signal. *See, e.g.*, 297 patent at 3:30-37; 5:20-21; 40-46. |

**1. Ciena Bears the Burden of Showing the Terms "Energy Level Detector" and "Energy Level Circuit" Should Be Construed as a Means-Plus-Function Claim**

Ciena contends that the terms "energy level detector" and "energy level circuit" are used essentially interchangeable in the claims and, therefore, should be construed together here. For both terms, Ciena argues that normal rules of construction should not apply, but instead, the terms

12

should be subject to means-plus-function treatment. That must fail. The terms "detector" and "circuit" are not a means-plus-function term. Ciena's argument to the contrary, if accepted, would result in legal error. It fails.

As an initial matter, the terms do not use the word "means." Under controlling Federal Circuit law, this creates a presumption that the terms are *not* subject to means-plus-function treatment under 35 U.S.C § 112(6). *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). In particular, Ciena bears the burden of showing that the claimed phrases fail to "'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function'" to a POSITA. *Id*. at 1348. "From a procedural standpoint, this presumption imposes on [Ciena] a burden of going forward with evidence to rebut the presumption," and the burden always remains with Ciena. *Apex, Inc. v. Raritan Comp., Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003).

Based on the relevant claim construction record between Oyster and Ciena, the current intrinsic record and filings before the Court, and controlling law, Ciena cannot meet its burden on these disputed terms.

### 2. Ciena Cannot Meet its Burden to Show the Claimed Terms Are Subject to Means-Plus-Function Treatment, Particularly In Light of Their *Past* Admission that "Energy Level Detector" Should Not Be So Construed

As this Court may recall, the term "energy level detector" has already been construed by the Court—and it was *not* construed as a means-plus-function term when it first consider this claimed phrase in the siblings patents based on the same specification in the '297 patent family. *Oyster Optics, Inc. v. Ciena Corporation*, C.A. No. 4:17-cv-05920-JSW, Dkt. Nos. 113, 119.

This was not an accident. To the contrary, ***neither side*** proposed it be construed as a means-plus-function element. For its part, Ciena never proposed means-plus-function treatment to the same term in that earlier case between the two parties here. Instead, it acknowledged what is obvious to a POSITA anyway: that the term "detector" has sufficient circuitry to apply the normal rules of claim construction and not the rules concerning means-plus-function treatment

13

under 35 U.S.C § 112(6). And while Ciena's expert now provides paid extrinsic evidence suggesting that an "energy level circuit" and "energy level detector" are black boxes with no structure, its expert in the past case did not contend the same and, instead, had no problem explaining how that structure works in light of the patent. Ex. H  8-13.

Unsatisfied with the claim construction given by this Court on the term "energy level detector," Ciena now does an about face and applies the opposite framework to propose a new (and narrower) construction. But that does not work. Ciena's admission and acknowledgements from the prior case involving the same patent family and specification are telling and confirm the right answer here: the disputed terms should not be subject to § 112(6).

### 3. Moreover, Ciena's *Present* Admission that the '297 Patent's "Circuit" Conveys Structure to a POSITA Likewise Defeats Its Proposed Construction

While Ciena's past acknowledgments prove there is no way for it to meet its burden on the same term here, there is more. Perhaps a Freudian slip of sorts, *in this case*, Ciena acknowledges and again admits that the term "circuit" connotes structure. Indeed, in its identification of linked "structure" for these terms, Ciena says that "*a circuit on a circuit board*…" is the class structure that is linked to the term.

This is also telling—and dispositive of the dispute. Again, to prevail on the initial dispute on this term, Ciena must meet its burden of showing that the claimed phrases fail to "'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function'" to a POSITA. *See Williamson,* 792 F.3d at 1348. But its own acknowledgment that "circuit" is a "structure" to a POSITA prevents Ciena from meeting its burden. And nothing in Ciena's purely conclusory less-than-a-page section of its declaration from Dr. Blumenthal changes any of this.

Consistent with the specification and plain meaning, the *claim language* itself makes clear that "energy level circuit" and "energy level detector" describe a class of structures. For instance, each time the term is used, the claim term makes clear that it is "coupled" to another tangible and structural element, namely, "*an optical fiber*." This is important, because contextual claim language *must* be considered in determining whether means-plus-function applies. *Apex, Inc. v.*

14

*Raritan Comp., Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003) ("[t]he primary source of this error [in construing the terms under §112, ¶ 6,] lies in the district court's reliance on single words of the limitation, e.g., "circuit," as opposed to the limitations as a whole, e.g., "a first interface circuit for receiving keyboard and cursor control device signals from the workstation.").

### 4. Finally, Federal Circuit Law on the Term "Circuit" Also Contradicts Ciena's Position on these Disputed Terms—and Further Ciena's Construction Would Lead To Legal Error

There should be no reasonable debate that Ciena's position on these disputed terms would lead to reversible error. But if there were, Federal Circuit caselaw would put that debate to rest. For example, in *Apex*, the court found that, in light of the technical definitions in the record, a POSITA would understand that the term "***circuit***" itself would connote structure and, when used with the appropriate identifier, "such as [] logic," the term "certainly identifies some structural meaning[.]" *Apex*, 325 F.3d at 1372. Even the Manual of Patent Examining Procedure States that "circuit" is one of several "examples of structural terms that have been found not to invoke 35 U.S.C. 112(f) or pre-AIA 35 U.S.C. 112, paragraph 6[.]" M.P.E.P. §2181, available at https://www.uspto.gov/web/offices/pac/mpep/s2181.html Accordingly, Ciena's argument fails.

### G. "control electronics to provide control signals, in accordance with the data stream, to the laser" ('297 patent cl. 14)

| Oyster's Proposed Construction | Ciena's Proposed Construction |
|---|---|
| Plain and ordinary meaning. The term is not indefinite and not subject to 35 U.S.C. § 112, paragraph 6. | The claim limitation "control electronics to provide control signals, in accordance with the data stream, to the laser" invokes 35 U.S.C. § 112, sixth paragraph. The written description fails to disclose the corresponding structure, material, or acts for performing the claimed function. Therefore, the claim is indefinite.<br><br>**Structure:**<br>an electronic controller on the printed circuit board. *See, e.g.*, 297 patent at 4:47-52; Fig. 2 (showing a controller 18 powering the laser 12 and receiving a data stream 19).<br><br>**Function:** |

**PLAINTIFF OYSTER OPTICS LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

| | The function of providing control signals, in accordance with the data stream, to the laser is not disclosed. *See, e.g.*, 297 patent at 4:47-52 (the "electronic controller 18 . . . may provide power to the laser 12.") |
|---|---|

Ciena argues that the "control electronics" term is (1) subject to means-plus-function treatment and (2) indefinite because structure is purportedly not provided in the specification. Ciena cannot meet its burden on either of these arguments.

**1. Ciena Bears the Burdens of Showing this Phrase Should Be Construed as a Means-Plus-Function Term and Also Proving, By Clear and Convincing Evidence, that Merely Using the Term Renders the Claims Invalid for Indefiniteness**

Ciena's argument that this term is indefinite rests on two false premises. *First*, because the disputed term does not use the word "means," Ciena bears the burden of proving that "control electronics" is a means-plus-function term. *See Williamson*, 792 F.3d at 1348. But it is not—and that is fatal to Ciena's position on the term. "From a procedural standpoint, this presumption imposes on [Ciena] a burden of going forward with evidence to rebut the presumption," and the burden always remains with Ciena. *Apex, Inc.*, 325 F.3d at 1372.

*Second*, if and only if the term is a means-plus-function term, then Ciena also has to prove—by clear and convincing evidence—that the term is a pure black box and would be indefiniteness to one of skill in the art. *See Intel Corp. v. VIA Techs.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003) ("Any fact critical to a holding on indefiniteness, moreover, must be proven by the challenger by clear and convincing evidence."). That position does not pass the straight-face test and also fails.

**2. Ciena Cannot Meet its Burden to Show the Claimed Term Is Subject to Means-Plus-Function Treatment; Indeed, the Only Evidence Is Has Presented Proves the Opposite And So Does the Intrinsic Record**

On its initial burden, because the term does not include the word "means," Ciena must meet its burden of providing evidence showing that the claimed phrase fails to "'recite sufficiently

16

definite structure' or else recites 'function without reciting sufficient structure for performing that function'" to a POSITA. *See Williamson,* 792 F.3d at 1348. But the only thing it has presented is the declaration of Dr. Blumenthal. But Dr. Blumenthal's opinions on this term consist entirely of ***a single paragraph*** of obviously conclusory opinions. That is not evidence of anything. It should be disregarded and given no weight.

If anything, in that single paragraph, Dr. Blumenthal proves the opposite of what Ciena needs to show. In the second sentence of that opinion, even he declares that a POSITA "would have been familiar with the general concept of a controller." Blumenthal Decl. at 45.[3] And a controller is used in the patent, such as the example provided with "*controller 18*." A controller is obvious structure and, therefore, the phrase should not be construed as a means-plus-function term.

Consistent with the specification and plain meaning, the *claim language* itself makes clear that the term describes a class of structures. For instance, the "control electronics" provides an output to the laser and modulator—and even Ciena does not dispute that these are known structures to a POSITA. Again this is important, because contextual claim language ***must*** be considered in determining whether means-plus-function applies. *Apex*, 325 F.3d at 1372 ("[t]he primary source of this error [in construing the terms under §112, ¶ 6,] lies in the district court's reliance on single words of the limitation, e.g., "circuit," as opposed to the limitations as a whole, e.g., "a first interface circuit for receiving keyboard and cursor control device signals from the workstation"). Ciena's contrary construction would lead to reversible error.

### 3. Ciena Cannot Meet its Burden of Showing the Term Is Clearly and Convincingly Indefinite

As explained above, the term should not be subject to § 112 and, thus, Ciena's argument must fail.

But it fails for an additional reason: it is not indefinite. Ciena's argument to the contrary is based on the hard-to-believe premise that "control electronics" are a pure "black box" that means

---

[3] Dr. Blumenthal's declaration was provided to Oyster as part of the identification of extrinsic evidence required by Local Patent Rule 4-2 disclosures. Oyster assumes that Ciena will be filing this declaration with the Court as part of its brief.

nothing to a POSITA. Though Ciena has not yet articulated why, there can be no reasonable support for its argument. And nothing in Dr. Blumenthal's conclusory, one-paragraph statements on this term changes this reality. This is particularly true in light of the fact that the patent's intrinsic record shows a "*controller 18*" as an exemplary structure for performing claim 14.

### H. "a low pass filter coupled to the output of the photodector" ('297 patent cl. 18)

| Oyster's Proposed Construction | Ciena's Proposed Construction |
|---|---|
| Plain and ordinary meaning<br><br>**Intrinsic Evidence**:<br>297 patent at 3:66-4:3, 4:31-34, 5:34-60, 6:29-32, 6:38-44 | a circuit that performs low pass filtering an output of the photodetector.<br><br>**Intrinsic Evidence**:<br>297 patent at 3:66-4:3, 4:31-34, 5:34-60, 6:29-32, 6:38-44 |

This term has a clear plain and ordinary meaning, and nothing in the intrinsic record or in the evidence cited by Ciena supports deviation from that meaning. The term appears in a method claim, claim 18 of the '297 patent. ('297 patent at 8:63–64.) Its function in the claim is to identify what thing performs the "generating . . ." step of the claim. It imposes two requirements on that thing: (1) that it be "a low pass filter" and (2) that it be "coupled to an output of the photodetector."

Ciena does not appear to dispute that "low pass filter" and "output of the photodetector" are terms with plain meanings that do not require construction. Indeed, Ciena's proposal repeats "output of the photodetector" verbatim, and it only slightly modifies "low pass filter" to the gerund form "low pass filtering," without any apparent change in meaning. Rather, Ciena's construction adds two new apparent requirement beyond the plain meaning of the claim: (1) that the low pass filter be a "circuit" and (2) that the filter "filter[] an output" rather than being "coupled to an output," as the claim states.

There is no support in the record for adding a requirement that the low pass filter be a "circuit." Nothing in the parts of the specification cited by Ciena (dkt. 44 at 10), or anywhere else in the specification, describes the low pass filter as a "circuit." In the context of one embodiment, shown in Figure 3, the low pass filter 154 ('297 patent at 5:48–49) is described as part of an energy

level detector 33 (*id.* at 5:48–49), which in turn is referred to as a circuit (*id.* at 5:37). This description suggests that the low pass filter may be a *component of a circuit*, but need not be a circuit itself.

Moreover, the specification makes clear that analog low pass filters, such as shown in Figure 3, are just one possible type of low pass filter: "Additional filtering via averaging of digital conversions via a moving average or other digital filtering technique *could replace or supplement* filtering provided by analog filter 154." ('297 patent at 6:38–41.) As the specification makes clear, the low pass filter (or "low pass filtering" referred to in Ciena's construction) can be implemented in digital form. Such a digital implementation may involve "circuits," as digital computers are implemented as electronic devices, but they may not have a distinct physical "circuit" dedicated to low pass filtering, as Ciena appears to wish the claim to require. Any construction that excludes digital filtering implementations such as those expressly disclosed in the '297 patent specification ('297 patent at 6:38–41) is contrary to the plain meaning of the claim and to the intrinsic record.

Ciena's attempt to require that the low pass filter "filter[] an output," rather than be "coupled to an output" should likewise be rejected. The term "coupled" is clear and has a plain meaning fully consistent with the disclosures in the '297 patent specification. Nothing cited by Ciena supports adopting a construction that deviates from that plain meaning.

For all of these reasons, the Court should decline Ciena's invitation to limit the scope of this term to be less than its plain meaning and to thereby exclude disclosed embodiments. Rather, the Court should instruct the jury that this term should be applied with its plain and ordinary meaning.

### I. "a low pass filter coupled to the output of the photodector" ('297 patent cl. 18)

| Oyster's Proposed Construction | Ciena's Proposed Construction |
|---|---|
| Plain and ordinary meaning<br><br>**Intrinsic Evidence**:<br>297 patent at 3:66-4:3, 4:31-34, 5:34-60, 6:29-32, 6:38-44 | a circuit that performs low pass filtering an output of the photodetector.<br><br>**Intrinsic Evidence**:<br>297 patent at 3:66-4:3, 4:31-34, 5:34-60, 6:29-32, 6:38-44 |

This term has a clear plain and ordinary meaning, and nothing in the intrinsic record or in the evidence cited by Ciena supports deviation from that meaning. The term appears in a method claim, claim 18 of the '297 patent. '297 patent at 8:63–64. Its function in the claim is to identify what thing performs the "generating . . ." step of the claim. It imposes two requirements on that thing: (1) that it be "a low pass filter" and (2) that it be "coupled to an output of the photodetector."

Ciena does not appear to dispute that "low pass filter" and "output of the photodetector" are terms with plain meanings that do not require construction. Indeed, Ciena's proposal repeats "output of the photodetector" verbatim, and it only slightly modifies "low pass filter" to the gerund form "low pass filtering," without any apparent change in meaning. Rather, Ciena's construction adds two new apparent requirement beyond the plain meaning of the claim: (1) that the low pass filter be a "circuit" and (2) that the filter "filter[] an output" rather than being "coupled to an output," as the claim states.

There is no support in the record for adding a requirement that the low pass filter be a "circuit." Nothing in the parts of the specification cited by Ciena (Dkt. No. 44 at 10), or anywhere else in the specification, describes the low pass filter as a "circuit." In the context of one embodiment, shown in Figure 3, the low pass filter 154 ('297 patent at 5:48–49) is described as part of an energy level detector 33 (*id.* at 5:48–49), which in turn is referred to as a circuit (*id.* at 5:37). This description suggests that the low pass filter may be a *component of a circuit*, but need not be a circuit itself.

Moreover, the specification makes clear that analog low pass filters, such as shown in Figure 3, are just one possible type of low pass filter: "Additional filtering via averaging of digital conversions via a moving average or other digital filtering technique *could replace or supplement* filtering provided by analog filter 154." '297 patent at 6:38–41. As the specification makes clear, the low pass filter (or "low pass filtering" referred to in Ciena's construction) can be implemented in digital form. Such a digital implementation may involve "circuits," as digital computers are implemented as electronic devices, but they may not have a distinct physical "circuit" dedicated to low pass filtering, as Ciena appears to wish the claim to require. Any construction that excludes

digital filtering implementations such as those expressly disclosed in the '297 patent specification ('297 patent at 6:38–41) is contrary to the plain meaning of the claim and to the intrinsic record.

Ciena's attempt to require that the low pass filter "filter[] an output," rather than be "coupled to an output" should likewise be rejected. The term "coupled" is clear and has a plain meaning fully consistent with the disclosures in the '297 patent specification. Nothing cited by Ciena supports adopting a construction that deviates from that plain meaning.

For all of these reasons, the Court should decline Ciena's invitation to limit the scope of this term to be less than its plain meaning and to thereby exclude disclosed embodiments. Rather, the Court should instruct the jury that this term should be applied with its plain and ordinary meaning.


Dated: February 1, 2021                            Respectfully submitted,

                                                   **OYSTER OPTICS, LLC**

                                                   By: /s/ *Reza Mirzaie*
                                                   Marc A. Fenster (CA SBN 181067)
                                                   E-mail: mfenster@raklaw.com
                                                   Reza Mirzaie (CA SBN 246953)
                                                   E-mail: rmirzaie@raklaw.com
                                                   Paul A. Kroeger (SBN 229074)
                                                   Email: pkroeger@raklaw.com
                                                   Neil A. Rubin (CA SBN 250761)
                                                   Email: nrubin@raklaw.com
                                                   RUSS, AUGUST & KABAT
                                                   12424 Wilshire Boulevard, 12th Floor
                                                   Los Angeles, CA  90025
                                                   Telephone:     310/826-7474
                                                   Facsimile:     310/826-6991

                                                   **Attorneys for Plaintiff**
                                                   **OYSTER OPTICS, LLC**

**PLAINTIFF OYSTER OPTICS LLC'S OPENING CLAIM CONSTRUCTION BRIEF**

## CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on March 20, 2020 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first-class mail on this same date.

/s/ Reza Mirzaie

**PLAINTIFF OYSTER OPTICS LLC'S OPENING CLAIM CONSTRUCTION BRIEF**