RUSS, AUGUST & KABAT
Marc A. Fenster (SBN 181067)
Email: mfenster@raklaw.com
Reza Mirzaie (SBN 246953)
Email: rmirzaie@raklaw.com
Paul A. Kroeger (SBN 229074)
Email: pkroeger@raklaw.com
Neil A. Rubin (SBN 250761)
Email: nrubin@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

**Attorneys for Plaintiff Oyster Optics, LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OYSTER OPTICS, LLC,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CIENA CORPORATION,<br><br>　　　　　Defendant. | CASE NO. 4:20-cv-02354-JSW<br><br>**PLAINTIFF OYSTER OPTICS LLC'S REPLY CLAIM CONSTRUCTION BRIEF** |

# TABLE OF AUTHORITIES

**PAGE(S)**

A. "phase modulate" and variants thereof ('500 Patent, Cl. 1, 7, 8, 19) ...................... 1

B. "phase-modulated optical signals" ('500 cl. 1, 16)) ............................................... 4

C. "amplitude-modulating" and variants thereof ('500 cl. 1, 16, 17) ........................... 4

D. "a receiver having an interferometer" ('500 Patent cl. 16) ..................................... 4

E. "laser directly adjacent the phase-modulator" ('500 Patent cl. 8) .......................... 6

F. "energy level circuit" / "energy level detector" ('297 patent cl. 1, 17) .................. 7

G. "control electronics to provide control signals, in accordance with the data stream, to the laser" ('297 patent cl. 14) ................................................................ 11

H. "a low pass filter coupled to the output of the photodector" ('297 patent cl. 18) ................................................................................................................................ 14

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Apex, Inc. v. Raritan Comp., Inc.*
  325 F.3d 1364 (Fed. Cir. 2003) .................................................................................. 7, 9, 10

*Apple Inc. v. Motorola, Inc.*,
  757 F.3d 1286 (Fed. Cir. 2014) ........................................................................................ 9

*Aventis Pharma S.A. v. Hospira, Inc.*,
  675 F.3d 1324 (Fed. Cir. 2012) ........................................................................................ 5

*Chrimar Systems Inc. v. Cisco Systems Inc.*,
  No. C 13-01300- JSW, 2015 WL 1250106 (N.D. Cal. March 18, 2015) ......................... 6

*Enters. v. Ineract Accessories, Inc.*,
  424 F.3d 1324 (Fed. Cir. 2005) ........................................................................................ 6

*Erfindergememeinschaft Uropep GBR v. Eli Lilly & Co.*,
  2016 WL 6138124 E.D. Tex. Oct. 21 2016) ................................................................. 10

*Inphi Corp. v. Netlist, Inc.*,
  805 F.3d 1350 (Fed. Cir. 2015) ........................................................................................ 6

*Intelligent Automation Design, LLC v. Zimmer Biomet CMF and Thoracic, LLC*,
  799 Fed. App'x 847 (Fed. Cir. 2020) ............................................................................. 10

*JVW Enters. v. Interact Accessories, Inc.*,
  424 F.3d 1324 (Fed. Cir. 2005) ................................................................................... 2, 6

*Personalized Media Commc'ns v. ITC*,
  161 F.3d 696 (Fed. Cir. 1999) ........................................................................................ 10

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ................................................................................... 3, 6

*Rambus Inc. v. Rea*, 7
  31 F.3d 1248 (Fed. Cir. 2013) ........................................................................................ 14

*Renishaw PLC v. Marposs Socita' per Azioni*,
  158 F.3d (Fed. Cir. 1998) ................................................................................................. 6

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
  612 F.3d 1365 (Fed. Cir. 2010) ...................................................................................... 14

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
  299 F.3d 1313 (Fed. Cir. 2002) ........................................................................................ 6

*Thorner v. Sony Computer Entertainment Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012) ................................................................................... 2, 6

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
  503 F.3d 1295 (Fed. Cir. 2007) ........................................................................................ 5

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015) .......................................................................... 7, 9, 10, 11

**Statutes**

35 U.S.C § 112(6) ................................................................................................................. 7
35 U.S.C. 112(f) ................................................................................................................. 10

As Ciena's own responsive brief readily admits, for term after disputed term Ciena presents constructions that are narrower than what the plain meaning would have been to a person skilled in the art, in light of the patents. Ciena's constructions repeatedly import limitations from preferred embodiments of the patent specifications without establishing that the patentee acted as lexicographer or disclaimed scope, as required under the Federal Circuit's law of claim construction. By contrast, Oyster's constructions follow the claim construction approach taught by the Federal Circuit and should be adopted.

### A. "phase modulate" and variants thereof ('500 Patent, Cl. 1, 7, 8, 19)

It is undisputed that the '500 patent both describes and claims transmitters with a mode where "the light is both amplitude-modulated and phase-modulated." Nonetheless, Ciena seeks constructions requiring that "phase modulating does not include amplitude modulating," that "use of amplitude modulation does not include phase modulation," and that in phase-modulated signals "[t]he amplitude of the optical signals is not representative of data." The court in the *Infinera* case properly rejected similar arguments. Ex. B, Infinera Claim Construction Order at 7-15.

Ciena argues that this Court should construe this term differently because the court in *Infinera* allegedly did not construe the specific term "phase modulator." Judge Payne might be surprised to hear that, as his order on the terms "'phase modulate' and variants" lists claim 8 as one of the claims the terms he was construing appeared in (Ex. B at 7), and the only variant of "phase modulate" in claim 8 is "phase modulator." Ex. E, '500 patent at 8:58–59. More fundamentally, Ciena's argument fails because it is not arguing for a construction that gives "phase modulator" a meaning that is narrower than or distinct from "phase modulate." Ciena's construction of "phase modulator," in substance, simply adds the words "a device that" to the front of its construction for "phase modulating." Dkt. 50 at 5. In other words, Ciena agrees that a "phase modulator" is defined by what it is able to do ("phase modulate"), not by some specific structure or specific way of achieving that end.

This approach of defining a "phase modulator" as something that phase modulates is consistent with the approach every party and every court addressing these terms in Oyster's patents

has taken. For example, this Court, following the approach of the parties, issued a single construction covering both "phase modulate" and "phase modulator" in the '327, '511, and '898 patents, which was directed to the features of the optical signal, not of the particular apparatus that creates it. Ex. A, Ciena Claim Construction Order at 18–20.[1] Likewise, the court in *Infinera* issued a single construction addressing all variants "phase modulate" including "phase modulator," "phase modulating," and "phase modulated" and directed to the features of the optical signal. Ex. B, Infinera Claim construction Order at 7.

In contrast to the approach taken in these prior claim constructions, however, Ciena seeks to limit both the noun "phase modulator" and verb forms of "phase modulate" to require "*separate amplitude and phase modulators.*" Dkt. 50 at 7:15–16. Nothing in the specification or other intrinsic evidence describes the amplitude modulator and phase modulator as "separate." Indeed, the specification never even refers to there being an "amplitude modulator," except in describing prior art. Ex. E, '500 patent at 1:12–19. However, even if it were true every preferred embodiment of the '500 patent was described as having two "separate" modulators, that would not justify importing that as a requirement into the claims. *JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (courts "do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment."). Ciena does not even attempt to show that the patentee provided a special definition of "phase modulator" or disavowed scope from that term, as is required to give a term other than its full and customary meaning. *Thorner v. Sony Computer Entertainment Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). This is particularly true for claims 17–19, which are method claims that describe a method for transmitting, not a device for doing the transmitting, and which should not be limited to any particular apparatus.

---

[1] While the Court did construe "phase modulate" to limit the degree to which amplitude was changed in phase modulation, that construction was based on statements in the specifications of those patents describing amplitude as constant, which are not present in the '500 patent. Ex. A, Ciena Claim Construction Order at 18–20.

Ciena's enablement argument mis-states the law of claim construction and its own expert's opinions. Dr. Blumenthal opines that a second mode including both amplitude modulating and phase modulating is not enabled, because the '500 patent allegedly does not disclose a *receiver* that can read such a mode. Ex. I, Blumenthal Decl. at 16–17, 23. But the patent undisputedly discloses and claims a *transmitter* that both amplitude- and phase-modulates in the same mode. *See* Ex. E, '500 patent, claim 19. If Ciena's argument had any validity, it would be limited to claims that actually claim a receiver, not claims such as 1, 8, 17, and 19 that only claim a transmitter or method of transmission. More fundamentally, however, the mere fact that a claim is not enabled would not justify narrowing claim terms that are clear, such as the terms in dispute here. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005) (the maxim that claim be construed to preserve validity is only applied if "after applying all the available tools of claim construction, that the claim is still ambiguous").

As for Ciena's argument that Oyster's construction is "nonsensical," Oyster's constructions are perfectly consistent and logical. Under these constructions, "phase-modulating" in a first mode requires phase modulation, but can optionally involve other modulation as well, as claim 18 indicates. Likewise, "amplitude-modulating" in a second mode requires amplitude modulation, but can optionally involve other modulation, as claim 19 indicates. It is Ciena's constructions that are confusing, if not non-sensical. Inserting Ciena's constructions of "amplitude-modulated" and "phase-modulated" into claim 19 would yield a claim that requires both amplitude and phase modulation of "the light," but that also requires that "the phase modulating does not include amplitude modulating" and that "amplitude modulation does not include phase modulation." It is unclear what a jury is meant to do with such constructions. How does a jury know whether the amplitude and phase modulations performed in the same mode "include" one another? If what Ciena really hopes to argue is that there must be separate amplitude and phase modulators, that should be rejected as explained above.

### B. "phase-modulated optical signals" ('500 cl. 1, 16))

Just as for the above terms, Ciena argues that the Court should limit this term to particular features in the specification. The '500 patent clearly does not use "phase modulated" in the narrow sense that Ciena proposes. Claim 19 plainly describes optical signals (Ex. E, '500 patent at 10:17–19) that are **both** amplitude-modulated and phase-modulated (*id.* at 10:26–27). Ciena has not provided justification for narrowing "phase-modulated" in this term to be narrower than how those words are used in other claims.

### C. "amplitude-modulating" and variants thereof ('500 cl. 1, 16, 17)

Ciena's argument that Oyster's constructions render "amplitude modulation" and "phase modulation" interchangeable grossly misrepresents Oyster's position. Under Oyster's construction, modulation that alters phase (or amplitude) and leaves the other feature constant is phase (or amplitude) modulation and not the other kind of modulation. But a system that alters both phase and amplitude can potentially satisfy either claim term as claims 17 and 19 demonstrate. As with the phase modulation terms discussed above, Ciena has not provided justification for narrowing "amplitude-modulating" in this term to be narrower than how this term is understood in the art and actually used in the '500 patent claims.

### D. "a receiver having an interferometer" ('500 Patent cl. 16)

Oyster's opening brief cited to evidence, including the Handbook of Optics and the declaration of Dr. Goossen showing that the plain meaning of "interferometer" is broader than that in Ciena's proposed construction. Dkt. 45 at 9–11. Ciena's response concedes the point, not citing to a single extrinsic source or opinion of its expert providing a definition that supports Ciena's narrow construction. Rather, Ciena baldly asks the Court to narrow the interferometer of the claims to one specific type of interferometer used in a preferred embodiment, excluding even the other examples of interferometers disclosed in the specification. Dkt. 50 at 11:14–12:5.

As Ciena's own caselaw demonstrates, limiting claim terms based on the specification requires that the patentee "clearly express an intent" to redefine the term. *Aventis Pharma S.A. v.*

4
**PLAINTIFF OYSTER OPTICS LLC'S REPLY CLAIM CONSTRUCTION BRIEF**

*Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012). No such clear intent is evident here. In particular, the paragraph that Ciena relies on that refers to the "present invention" simply states that the invention provides a receiver that is "compatible with" three different types of transmitters: "existing transmitters," the transmitter of the '055 patent, and the transmitter of the "present invention." Ex. E, '500 patent at 6:20–25. There is no suggestion in that paragraph that the receiver of the "present invention" is limited to having a particular type of interferometer (or any interferometer at all). This is distinguishable from *Verizon*, where the features in question were described in a paragraph clearly describing the "present invention" as having those features. Verizon Servs. Corp. v. Vonage Holdings Corp., 503 F.3d 1295, 1308 (Fed. Cir. 2007).

The discussion of the preferred interferometer that Ciena relies on begins in a separate paragraph describing Figure 2, which the '500 patent specification expressly identifies a showing "a preferred embodiment of a receiver of the present invention," not as something defining or limiting the "present invention." Ex. E, '500 patent at 4:50–51, 6:26–33.

As for the statements in the '500 patent criticizing prior art Sagnac interferometer systems, Oyster's construction does not "recapture" those prior art Sagnac systems, because under Oyster's construction claim 16 would not cover them. As the '500 patent describes these systems, "[a] data transmitter is a phase modulator ***for modulating counter-propagating light beams*** sent by a receiver round a loop." Ex. E, '500 patent at 1:49–51 (emphasis added). In other words, both beams of light are phase-modulated—i.e., are signal beams—and there is no reference beam as required by Oyster's proposed construction of "a receiver having an interferometer."

It is undisputed that Oyster's proposed construction accords with the plain meaning of interferometer, and this construction does not recapture any "disparaged" embodiments. Ciena has not justified limiting the interferometer of claim 16 to one specific configuration, excluding other

5
**PLAINTIFF OYSTER OPTICS LLC'S REPLY CLAIM CONSTRUCTION BRIEF**

ways of splitting and combining light to make measurements using interference. Accordingly, Ciena's construction should be rejected.

### E. "laser directly adjacent the phase-modulator" ('500 Patent cl. 8)

Ciena defends its narrow construction of "laser directly adjacent the phase-modulator" by misstating the law. Opp'n at 12-13. It first argues Oyster reliance on *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002), is misplaced because it is "pre-*Phillips*."[2] *Id.* Ciena fails to point to any authority overruling the proposition that the proper starting point for the claim construction inquiry is the language of the claims. Moreover, *Teleflex* has been repeatedly cited by this Court post-*Phillips*. *See, e.g.*, *Chrimar Systems Inc. v. Cisco Systems Inc.*, No. C 13-01300- JSW, 2015 WL 1250106, at *2 (N.D. Cal. March 18, 2015); *Freeman v. Delta Air Lines, Inc.*, No. C 13-041769-JSW, 2015 WL 5609996 at *2 (N.D. Cal. Sept. 24, 2015).

Moreover, Ciena fails to respond to Oyster's post-*Phillips*, *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1363, 1365 (Fed. Cir. 2012), *JVW Enters. v. Ineract Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005), recognizing that claim terms are to given their full scope unless there is an express definition or disavowal, and that limitations of preferred embodiments should not be imported into the claims. This Court recognizes these cardinal principals of claim construction in its Orders. *See Chrimar Systems Inc.*, 2015 WL 1250106, at *2 ("limitations from the specification (such as from the preferred embodiment) may not be read into the claims, absent the inventor's express intention to the contrary").

Ciena's proposal violates of these basic principles of claim construction. It seeks to replace the plain-English phase "directly adjacent" with an eleven-word phrase simply because that it how a preferred embodiment discussed in the patent functions. Opp'n at 13-14. It fails to point (because it cannot) any disavowal of claim scope supporting their construction. Moreover, it seeks to import the negative limitation "no component in-between" even though such constructions are disfavored. *Inphi Corp. v. Netlist, Inc.*, 805 F.3d 1350, 1355 (Fed. Cir. 2015) (the specification must "describe[] a reason to exclude the relevant limitation.

---

[2] Curiously, in the same paragraph in which it makes this argument, Ciena cites its own pre-*Philips* case, *Renishaw PLC v. Marposs Socita' per Azioni*, 158 F.3d (Fed. Cir. 1998), apparently to argue that no formal rules of claim construction should be applied to this case. Opp'n at 13.

Likewise, its Opposition makes clear that this negative limitation is based on a description found in only a few lines of the specification, primarily column 4, lines 61-64: "Light emitted from laser 12 passes through a phase modulator 16 . . . directly next to or part of the same package as laser 12." '500 Patent at 4:61-64. Opp'n at 12-14. Nothing herein uses the phrase "no component in between" as Ciena proposes. While Ciena has failed to show any reason to depart from the plain and ordinary means of these terms, the teaching it relies on at most means that "directly adjacent" includes "next to or part of the same package" as it is used describe the same embodiment. This teaching does not limit to the term to having "no component in between" as Ciena proposes.

### F. "energy level circuit" / "energy level detector" ('297 patent cl. 1, 17)

Ciena bears the burden of showing that the claimed phrases fail to "'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function'" to a POSITA. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). "From a procedural standpoint, this presumption imposes on [Ciena] a burden of going forward with evidence to rebut the presumption," and the burden always remains with Ciena. *Apex, Inc. v. Raritan Comp., Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003). Ciena has not come forward with anything of the sort. To the contrary, it has offering only flawed attorney argument. Indeed, though submitting a half-page declaration from its expert, Ciena hardly cites it at all. This leaves Ciena devoid of any relevant evidence to meet its burden.

The term "energy level detector" was previously by the Court—and **not** as a means-plus-function term when it first considered this claimed phrase in the sibling patents based on the '327 and '898 patents. *Oyster Optics, Inc. v. Ciena Corporation*, C.A. No. 4:17-cv-05920-JSW, Dkt. Nos. 113, 119. Indeed, **neither side** proposed it be construed as a means-plus-function element. For its part, Ciena acknowledged what is obvious to a POSITA: that the term "detector" has sufficient circuitry to apply the normal rules of claim construction and not the rules concerning means-plus-function treatment under 35 U.S.C § 112(6). And while Ciena's expert now suggests

that an "energy level" terms convey zero structure to a POSITA, its expert in the past case had no problem explaining how that structure works in light of the patent. Opening Br., Exs. H 8-13.

Faced with this contradiction, Ciena not tells this Court to pay no attention to this lengthy and relevant record asserting that the two "<u>energy level detector</u>" terms "are *different*" and use "vastly different modifying" claim language. Resp. Br. at 19. This argument does not pass the straight-face test. Ciena's insistence to ignore this critical point and look to "modifying language" is unfounded and not well taken. Even if someone were to look past the disputed term at the center of the current dispute Ciena has forced on the parties, the "modifying language" around it is hardly "different" – it is virtually the same:

| Language "modifying" the "energy level detector" term in the same patent family in the *past* case | Language "modifying" the "energy level detector" term in the same patent family in the *present* case |
|---|---|
| "an energy level detector optically connected between the receiver and the fiber input to measure an energy level of the optical signals…" | "an energy level detector affixed to the printed circuit board and optically coupled to the optical fiber, [for detecting] an energy level of the optical data signal…" |

Ciena's concession and acknowledgements from the prior case involving the same patent family and specification are telling and confirm the right answer here: the disputed terms should not be subject to § 112(6).

While Ciena contends that a "review of the specification confirms that the 'energy level' [terms] should be construed under § 112(6)," that fails because the specification is **identical** to the one supporting '327 and '898 patents in the same family. And, more to the point, Ciena's contention also fails because it rests on unsupported reasoning and flawed logic. Under Ciena's logic, the term "energy level circuit" and "detecting an energy level of the optical signal" must be "coined"—and, thus, leave a POSITA with no clue as to what it is—merely because that term is not identically used in the patent specification. Resp. Br. at 21. Ciena, of course, cites no supporting law for this point, because there is none. The rest of Ciena's argument regarding the patent specification is just a distraction. Ciena nonsensically discusses various portions of the

patent specification that do nothing to help its argument that the claim term conveys no structure to a POSITA. *Id*. at 21-22. That argument is fatally flawed and this Court should reject it.

While Ciena's *past* acknowledgments prove there is no way for it to meet its burden on the same term here, there is more. *In the present case*, Ciena acknowledges and again admits that the term "circuit" connotes structure. Indeed, in its identification of linked "structure" for these terms, Ciena says that "**a circuit on a circuit board**…" is the class structure that is linked to the term. This is also dispositive of the dispute. Ciena own acknowledgment that "circuit" is a "structure" to a POSITA prevents Ciena from meeting its burden under *Williamson*. And nothing in Ciena's conclusory less-than-a-page section of Dr. Blumenthal's declaration changes any of this.

Moreover, he *claim language* itself makes clear that "energy level circuit" and "energy level detector" describe a class of structures. For instance, each time the term is used, the claim term makes clear that it is "coupled" to another tangible and structural element, namely, "*an optical fiber*." The contextual claim language must be considered in determining whether means-plus-function applies. *Apex, Inc. v. Raritan Comp., Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003) ("[t]he primary source of this error [in construing the terms under §112, ¶ 6,] lies in the district court's reliance on single words of the limitation, e.g., "circuit," as opposed to the limitations as a whole, e.g., "a first interface circuit for receiving keyboard and cursor control device signals from the workstation.").

Oyster has already explained all of these points in its opening brief. The only Ciena provides is to insert two sentences that amount to another red herring. Ciena argues that the fact that contextual claim language also gives a POSITA structural connections for the claimed energy level detector is irrelevant, because those structural connections do not describe how the detection of an energy level is performed. Resp. Br. at 21. That completely misses the point. As the Federal Circuit and numerous other courts have repeatedly held, Structure may also be provided by describing the claim limitation's operation, such as its input, output, or connections. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1299 (Fed. Cir. 2014) overruled on other grounds by *Williamson v. Citrix Online. LLC,* 792 F.3d 1339 (Fed. Cir. 2014).

Federal Circuit caselaw shows that Ciena is asking the Court to commit legal error. For

**PLAINTIFF OYSTER OPTICS LLC'S REPLY CLAIM CONSTRUCTION BRIEF**

example, in *Apex*, the court found that, in light of the technical definitions in the record, a POSITA would understand that the term "***circuit***" itself would connote structure and, when used with the appropriate identifier, "such as [] logic," the term "certainly identifies some structural meaning[.]" *Apex*, 325 F.3d at 1372. Even the Manual of Patent Examining Procedure States that "circuit" is one of several "examples of structural terms that have been found not to invoke 35 U.S.C. 112(f) or pre-AIA 35 U.S.C. 112, paragraph 6[.]" M.P.E.P. §2181, available at https://www.uspto.gov/web/offices/pac/mpep/s2181.html

The same is true for the term "detector." The Federal Circuit in *Personalized Media* held that the claim term "detector," by itself, connoted sufficient structure to a person of ordinary skill in the art. *Personalized Media Commc'ns v. ITC,* 161 F.3d 696, 704-05 (Fed. Cir. 1999). (agreeing with International Trade Commission ALJ that " 'detector' had a well-known meaning to those of skill in the electrical arts connotative of structure"). And numerous cases since then, including some after *Williamson*, confirm this point in a whole host of electronic and other arts. *See, e.g.*, *Erfindergememeinschaft Uropep GBR v. Eli Lilly & Co.*, 2016 WL 6138124 at *E.D. Tex. Oct. 21 2016) (Bryson, J., sitting by designation) (acknowledging that term "detector" was "not a generic structural term such as 'means,' 'element,' or 'device,' and that it "had a well-known meaning to those of skill in the electrical arts connotative of structure.")

Ciena's argument ignores these cases and the great weight of caselaw in general. Indeed, the only response it has to any of this is to say that "circuit" *could* be held to be a mean-plus-function limitation. Resp. Br. at 20. But incredibly, it relies only on some language in the dissenting opinion in *Abacus* and a non-precedential decision in *Intelligent Automation Design*, in which the court found the claim subject to means-plus-function treatment because the plaintiff **did not** "contest the district court's means-plus-function interpretation of claim 1." *Intelligent Automation Design, LLC v. Zimmer Biomet CMF and Thoracic, LLC*, 799 Fed. App'x 847, at *1 (Fed. Cir. 2020).

However, if this Court were to agree that the term should be so construed, Ciena's proposed structure is also flawed. Ciena's entire results-oriented argument for it—which is limited to a single paragraph—rests on the flawed premise that the term "is limited to hardware" because elsewhere

10
PLAINTIFF OYSTER OPTICS LLC'S REPLY CLAIM CONSTRUCTION BRIEF

in the claim there is some piece of "circuit" structure also claimed and that must be hardware. Resp. Br. at 22. Besides including an obvious admission that "circuit" does convey structure to a POSITA—which defeats means-plus-function treatment altogether—this argument has no merit. After finding that a term is subject § 112, paragraph 6, the only question for this Court is what structures are linked to that term. *Williamson* makes this point clear. *Williamson*, 792 F.3d at 1351 (after determining that § 112 applies, a court should "determine what structure, if any, *disclosed in the specification* correspond to the claimed functions.") (emphasis added).

Ciena offers no argument that there is no linkage and no argument that Oyster's proposed linked structure is incorrect. It only offers argument for why Oyster's correctly identified structure should be further narrowed for flawed reasons *beyond* the patent specification. This is irrelevant and should be rejected. Besides, even accepting Ciena's flawed logic, just because there is a circuit board claimed elsewhere does ***not*** lead to a conclusion that the energy level detector must be hardware as well. It obviously could be running on firmware or software, even on that board.

### G. "control electronics to provide control signals, in accordance with the data stream, to the laser" ('297 patent cl. 14)

Ciena cannot meets its burden to show that the "control electronics" term is (1) subject to means-plus-function treatment and (2) clearly and convincingly indefinite because structure is purportedly not provided in the specification. Because the term does not include the word "means," Ciena must meet its show that the claimed phrase fails to "'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function'" to a POSITA. *See Williamson,* 792 F.3d at 1348. But the only thing it has presented is the declaration of Dr. Blumenthal. But his on this term consist entirely of *a single paragraph* of obviously conclusory opinions. It should be disregarded and given no weight.

If anything, Dr. Blumenthal proves the opposite of what Ciena needs to show. In the second sentence of that opinion, even he declares that a POSITA "would have been familiar with the general concept of a controller." Blumenthal Decl. at 45. And a controller is used in the patent, such as the example provided with "*controller 18*." A controller is obvious structure and, therefore,

11
**PLAINTIFF OYSTER OPTICS LLC'S REPLY CLAIM CONSTRUCTION BRIEF**

the phrase should not be construed as a means-plus-function term.

Consistent with the specification and plain meaning, the *claim language* itself makes clear that the term describes a class of structures. For instance, the "control electronics" provides an output to the laser and modulator—and even Ciena does not dispute that these are known structures to a POSITA. Again, contextual claim language ***must*** be considered in determining whether means-plus-function applies. *Apex*, 325 F.3d at 1372. Ciena's contrary construction would lead to reversible error.

Ciena contends, with pure attorney argument, that the "controller 18" must be different from the claimed "control electronics" because the specification explains that controller 18 "may provide power to the laser" and this is not identical to the claimed function. Resp. Br. at 16-17. But again, this kind of word matching to the claim is not required under the law—and Ciena provides zero cases suggesting that a POSITA would require word matching.

At any rate, Ciena is also wrong about the disclosure in the patent specification itself. While Ciena tells this Court that the patent specification "indisputably" provides "no disclosure" that the controller functions to "provide control signals in accordance with the data stream, to the laser" because it only says it "may provide power to laser 12," that is a misrepresentation of the record. Indeed, several words before Ciena's cropped quote and the *very next* sentence after it prove it is a falsehood—and further proves that controller 18 does perform the claimed function here:

> An electronic controller **18**, preferably manufactured directed on the printed circuit board of backplane **7** (FIG. 1), **controls modulator 16** and may provide power to laser **12**. **Input data 19 is fed to the controller 18, which then controls modulator 16 to modulate the light from laser 12 as a function of the input data 19.**



Ciena's cropped quotes and misrepresentations to this Court are no substitute for the truth or real evidence, Ciena cannot meet its burden on this term. It is not and should not be subject to § 112 . And Ciena cites not facts or caselaw suggesting the opposite.

Likewise, the term is not indefinite. Ciena's argument to the contrary is based on the hard-to-believe premise that "control electronics" are a pure "black box" that means nothing to a POSITA—which, in its own view, is a person with "at least a Masters degree in electrical engineering, or equivalent training, and approximately two years of experience working in the field of optical communication." According to Ciena's flawed argument, this POSITA would see the term "control electronics" and also see the discussion of "controller" or "control electronics 18" and have no clue what that disclosure is or what it does.

Nothing in Dr. Blumenthal's conclusory, one-paragraph statements provide any support for this argument. As shown above, this is particularly true in light of the fact that, contrary to Ciena's misrepresentations, the patent's intrinsic record does show a "*controller 18*" or "*control electronics*" 18 as an exemplary structure for performing claim 14. Ciena's citation to inapposite cases with purely coined terms do not help its cause. Those cases do not involve this claimed term

or anything close to it, let alone a specification that describes and links the claimed function with "control electronics" 18 or "controller 18" the way the 297 patent does.

In the end, Ciena provides no evidence—let alone any intrinsic record or extrinsic record support to meet its burden of *clear and convincing* evidence—to show the term "control electronics" in the context of the '297 claims is a pure "black box" to a POSITA.

### H. "a low pass filter coupled to the output of the photodector" ('297 patent cl. 18)

Ciena's proposed construction of "a low pass filter coupled to the output of the photodetector" misreads the claim language and, by Ciena's own admission, seeks to write limitations of the preferred embodiment into the claims. Ciena's first contention that "[t]he plain language of claims 17 and 18 . . . [requires] that the claimed receiver, energy level detector, photodetector and low pass filter are all affixed to the same circuit board" simply misreads the claim language. The claim requires only the "optical receiver" and "energy level detector" must be "affixed to the circuit board assembly." The manner in which the photodetector is connected to the circuit board is not claimed. Indeed, the only requirement for the photodetector is that it "generat[e] … a photodetector voltage." Ciena's attempt to require that the "low pass filter and photodetector" be "components of the energy level detector" and therefore "affixed to the printed circuit board" are not limitations of the claims. Opp'n at 23. This is a clear attempt to import descriptions of the preferred embodiments into the claims.

Ciena's brief appears to concede (as it must) that the use of digital equivalents to the analog circuity is contemplated by the specification. Opp'n at 25 ("the patents' description of this digital embodiment . . . "a digital circuit equivalent to FIG. 3.") Such use of digital technology is expressly taught: "Additional filtering via averaging of digital conversions via a moving average or other digital filtering technique *could replace or supplement* filtering provided by analog filter 154." ('297 patent at 6:38–41.) Yet, it seeks to exclude this embodiment from the claims 17 and 18 solely based on the teaching of the *analog* preferred embodiment. Opp'n at 25. This is improper. *See Rambus Inc. v. Rea*, 731 F.3d 1248, 1253 (Fed. Cir. 2013) ("A claim constructs that excludes the preferred embodiment is rarely, if ever, correct").

Ciena attempts supports its further requirement that the low pass filter "filter[] an output," rather than be "coupled to an output" based on the description of a preferred embodiment only. Opp'n at 23-24 ("Consistent with the plain claim language, the specification explains that depending on the electrical bandwidth of the photodetector, "the electrical signal may be filtered by a low pass filter 154 to provide an average voltage level which represents the average optical power measured by photodetector 153."). Such a limitation is not required by the claim language, and Ciena points to no disavowal limiting the claims to the embodiment which it references.

Dated: March 15, 2021

Respectfully submitted,

**OYSTER OPTICS, LLC**

By: /s/ Reza Mirzaie
Marc A. Fenster (CA SBN 181067)
E-mail: mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
E-mail: rmirzaie@raklaw.com
Paul A. Kroeger (SBN 229074)
Email: pkroeger@raklaw.com
Neil A. Rubin (CA SBN 250761)
Email: nrubin@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025
Telephone:     310/826-7474
Facsimile:      310/826-6991

**Attorneys for Plaintiff**
**OYSTER OPTICS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on March 15, 2021 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first-class mail on this same date.

                                                    /s/ *Reza Mirzaie*