RUSS, AUGUST & KABAT
Marc A. Fenster (SBN 181067)
Email: mfenster@raklaw.com
Reza Mirzaie (SBN 246953)
Email: rmirzaie@raklaw.com
Paul A. Kroeger (SBN 229074)
Email: pkroeger@raklaw.com
Neil A. Rubin (SBN 250761)
Email: nrubin@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

**Attorneys for Plaintiff Oyster Optics, LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OYSTER OPTICS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>CIENA CORPORATION,<br><br>Defendant. | CASE NO. 4:20-cv-02354-JSW<br><br>**PLAINTIFF OYSTER OPTICS LLC'S REVISED REPLY CLAIM CONSTRUCTION BRIEF** |

# TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION ................................................................................................ 1

II. AGREED CONSTRUCTIONS ......................................................................... 1

III. DISPUTED CONSTRUCTIONS FOR THE PATENTS-IN-SUIT ............... 1

    A. "phase modulate" and variants thereof ('500 Patent, Cl. 1); ................... 1

    B. "phase-modulated optical signals" ('500 cl. 1, 16)) ................................ 4

    C. "amplitude-modulating" and variants thereof ('500 cl. 1, 16) ................ 4

    D. "a receiver having an interferometer" ('500 Patent cl. 16) .................... 4

    E. "mode" ('500 Patent cl. 1, 16) .................................................................. 6

        1. The Claim Language Supports Oyster's Proposed Construction ............... 6

        2. The Specification Supports Oyster's Proposed Construction .................... 8

        3. The Term "Mode" Was Not Narrowed in Prosecution as Ciena Contends
           ................................................................................................................... 11

        4. The Extrinsic Expert Declarations Support Oyster's Construction .......... 13

IV. CONCLUSION .................................................................................................. 14

**Cases**

*Aircraft Tech. Publishers v. Avantext, Inc.*,
   C 07-4154 SBA, 2009 WL 3817944, at *3 (N.D. Cal. Nov. 10, 2009) .................................... 6

*Aventis Pharma S.A. v. Hospira, Inc.*,
   675 F.3d 1324 (Fed. Cir. 2012) ............................................................................................ 5

*Comp. Docking Station Corp. v. Dell, Inc.*,
   519 F.3d 1366 (Fed. Cir. 2008) .......................................................................................... 12

*Finjan, Inc. v. Symantec Corp.*,
   14-CV-02998-HSG, 2017 WL 550453, at *3 (N.D. Cal. Feb. 10, 2017) ............................... 6

*JVW Enters. v. Interact Accessories, Inc.*,
   424 F.3d 1324 (Fed. Cir. 2005) ............................................................................................ 3

*MBO Laboratories, Inc. v. Becton, Dickinson & Co.*,
   474 F.3d 1323 (Fed. Cir. 2007) ............................................................................................ 8

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ..................................................................................... 3, 11

*Thorner v. Sony Computer Entertainment Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) ............................................................................................ 3

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007) ............................................................................................ 5

# I. INTRODUCTION

As Ciena's own responsive brief readily admits, for term after disputed term Ciena presents constructions that are narrower than what the plain meaning would have been to a person skilled in the art, in light of the patent. Ciena's constructions repeatedly import limitations from preferred embodiments of the patent specification and from misreadings of the prosecution history, excluding preferred embodiments from the claims, without establishing that the patentee acted as lexicographer or disclaimed scope, as required under the Federal Circuit's law of claim construction. By contrast, Oyster's constructions follow the claim construction approach taught by the Federal Circuit and should be adopted.

# II. AGREED CONSTRUCTIONS

Ciena correctly notes in its responsive claim construction brief that the parties have agreed "the controller in a second alternate mode amplitude-modulating the light from the laser as a function of the electronic data stream" means "the controller in a second alternate mode amplitude-modulating the light from the laser as a function of the same electronic data stream as in the first mode." Dkt. 96 at 2:4-14. Oyster apologizes for neglecting to include this agreed term in its opening brief. Oyster notes that the emphasis that Ciena applies in the agreed construction is Ciena's own emphasis and not an emphasis that the parties have agreed to.

# III. DISPUTED CONSTRUCTIONS FOR THE PATENTS-IN-SUIT

## A. "phase modulate" and variants thereof ('500 Patent, Cl. 1);

It is undisputed that the '500 patent both describes and claims transmitters with a mode where "the light is both amplitude-modulated and phase-modulated." Nonetheless, Ciena seeks constructions requiring that "phase modulating does not include amplitude modulating," that "use of amplitude modulation does not include phase modulation," and that in phase-modulated signals "[t]he amplitude of the optical signals is not representative of data." The court in the *Infinera* case properly rejected similar arguments. Ex. B, Infinera Claim Construction Order at 7-15.

**PLAINTIFF OYSTER OPTICS LLC'S REVISED REPLY CLAIM CONSTRUCTION BRIEF**

Ciena argues that this Court should construe this term differently because the court in *Infinera* allegedly did not construe the specific term "phase modulator." Judge Payne might be surprised to hear that, as his order on the terms "'phase modulate' and variants" lists claim 8 as one of the claims the terms he was construing appeared in (Ex. B at 7), and the only variant of "phase modulate" in claim 8 is "phase modulator." Ex. E, '500 patent at 8:58–59. More fundamentally, Ciena's argument fails because it is not arguing for a construction that gives "phase modulator" a meaning that is narrower than or distinct from "phase modulate." Ciena's construction of "phase modulator," in substance, simply adds the words "a device that" to the front of its construction for "phase modulating." Dkt. 116 at 5. In other words, Ciena agrees that a "phase modulator" is defined by what it is able to do ("phase modulate"), not by some specific structure or specific way of achieving that end.

This approach of defining a "phase modulator" as something that phase modulates is consistent with the approach every party and every court addressing these terms in Oyster's patents has taken. For example, this Court, following the approach of the parties, issued a single construction covering both "phase modulate" and "phase modulator" in the '327, '511, and '898 patents, which was directed to the features of the optical signal, not of the particular apparatus that creates it. Ex. A, Ciena Claim Construction Order at 18–20.[1] Likewise, the court in *Infinera* issued a single construction addressing all variants "phase modulate" including "phase modulator," "phase modulating," and "phase modulated" and directed to the features of the optical signal. Ex. B, Infinera Claim construction Order at 7.

In contrast to the approach taken in these prior claim constructions, however, Ciena seeks to limit both the noun "phase modulator" and verb forms of "phase modulate" to require "*separate* amplitude and phase modulators." Dkt. 116 at 7:13–14. Nothing in the specification or other intrinsic evidence describes the amplitude modulator and phase modulator as "separate." Indeed, the specification never even refers to there being an "amplitude modulator," except in describing prior

---

[1] While the Court did construe "phase modulate" to limit the degree to which amplitude was changed in phase modulation, that construction was based on statements in the specifications of those patents describing amplitude as constant, which are not present in the '500 patent. Ex. A, Ciena Claim Construction Order at 18–20.

2
**PLAINTIFF OYSTER OPTICS LLC'S REVISED REPLY CLAIM CONSTRUCTION BRIEF**

art. Ex. E, '500 patent at 1:12–19. However, even if it were true every preferred embodiment of the '500 patent was described as having two "separate" modulators, that would not justify importing that as a requirement into the claims. *JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (courts "do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment."). Ciena does not even attempt to show that the patentee provided a special definition of "phase modulator" or disavowed scope from that term, as is required to give a term other than its full and customary meaning. *Thorner v. Sony Computer Entertainment Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). This is particularly true for claims 17–19, which are method claims that describe a method for transmitting, not a device for doing the transmitting, and which should not be limited to any particular apparatus.

Ciena's enablement argument mis-states the law of claim construction and its own expert's opinions. Dr. Blumenthal opines that a second mode including both amplitude modulating and phase modulating is not enabled, because the '500 patent allegedly does not disclose a ***receiver*** that can read such a mode. Ex. I, Blumenthal Decl. at 16–17, 23. But the patent undisputedly discloses and claims a ***transmitter*** that both amplitude- and phase-modulates in the same mode. See Ex. E, '500 patent, claim 19. If Ciena's argument had any validity, it would be limited to claims that actually claim a receiver, not claims such as 1, 8, 17, and 19 that only claim a transmitter or method of transmission. More fundamentally, however, the mere fact that a claim is not enabled would not justify narrowing claim terms that are clear, such as the terms in dispute here. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005) (the maxim that claim be construed to preserve validity is only applied if "after applying all the available tools of claim construction, that the claim is still ambiguous").

As for Ciena's argument that Oyster's construction is "nonsensical," Oyster's constructions are perfectly consistent and logical. Under these constructions, "phase-modulating" in a first mode requires phase modulation, but can optionally involve other modulation as well, as claim 18 indicates. Likewise, "amplitude-modulating" in a second mode requires amplitude modulation, but

3
**PLAINTIFF OYSTER OPTICS LLC'S REVISED REPLY CLAIM CONSTRUCTION BRIEF**

can optionally involve other modulation, as claim 19 indicates. It is Ciena's constructions that are confusing, if not non-sensical. Inserting Ciena's constructions of "amplitude-modulated" and "phase-modulated" into claim 19 would yield a claim that requires both amplitude and phase modulation of "the light," but that also requires that "the phase modulating does not include amplitude modulating" and that "amplitude modulation does not include phase modulation." It is unclear what a jury is meant to do with such constructions. How does a jury know whether the amplitude and phase modulations performed in the same mode "include" one another? If what Ciena really hopes to argue is that there must be separate amplitude and phase modulators, that should be rejected as explained above.

### B. "phase-modulated optical signals" ('500 cl. 1, 16))

Just as for the above terms, Ciena argues that the Court should limit this term to particular features in the specification. The '500 patent clearly does not use "phase modulated" in the narrow sense that Ciena proposes. Claim 19 plainly describes optical signals (Ex. E, '500 patent at 10:17–19) that are **both** amplitude-modulated and phase-modulated (*id.* at 10:26–27). Ciena has not provided justification for narrowing "phase-modulated" in this term to be narrower than how those words are used in other claims.

### C. "amplitude-modulating" and variants thereof ('500 cl. 1, 16)

Ciena's argument that Oyster's constructions render "amplitude modulation" and "phase modulation" interchangeable grossly misrepresents Oyster's position. Under Oyster's construction, modulation that alters phase (or amplitude) and leaves the other feature constant is phase (or amplitude) modulation and not the other kind of modulation. But a system that alters both phase and amplitude can potentially satisfy either claim term as claims 17 and 19 demonstrate. As with the phase modulation terms discussed above, Ciena has not provided justification for narrowing "amplitude-modulating" in this term to be narrower than how this term is understood in the art and actually used in the '500 patent claims.

### D. "a receiver having an interferometer" ('500 Patent cl. 16)

Oyster's opening brief cited to evidence, including the Handbook of Optics and the declaration of Dr. Goossen showing that the plain meaning of "interferometer" is broader than that in

4
**PLAINTIFF OYSTER OPTICS LLC'S REVISED REPLY CLAIM CONSTRUCTION BRIEF**

Ciena's proposed construction. Dkt. 113 at 12–14. Ciena's response concedes the point, not citing to a single extrinsic source or opinion of its expert providing a definition that supports Ciena's narrow construction. Rather, Ciena baldly asks the Court to narrow the interferometer of the claims to one specific type of interferometer used in a preferred embodiment, excluding even the other examples of interferometers disclosed in the specification. Dkt. 116 at 11:11–12:1.

As Ciena's own caselaw demonstrates, limiting claim terms based on the specification requires that the patentee "clearly express an intent" to redefine the term. *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012). No such clear intent is evident here. In particular, the paragraph that Ciena relies on that refers to the "present invention" simply states that the invention provides a receiver that is "compatible with" three different types of transmitters: "existing transmitters," the transmitter of the '055 patent, and the transmitter of the "present invention." Ex. E, '500 patent at 6:20–25. There is no suggestion in that paragraph that the receiver of the "present invention" is limited to having a particular type of interferometer (or any interferometer at all). This is distinguishable from *Verizon*, where the features in question were described in a paragraph clearly describing the "present invention" as having those features. *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007).

The discussion of the preferred interferometer that Ciena relies on begins in a separate paragraph describing Figure 2, which the '500 patent specification expressly identifies a showing "a preferred embodiment of a receiver of the present invention," not as something defining or limiting the "present invention." Ex. E, '500 patent at 4:50–51, 6:26–33.

As for the statements in the '500 patent criticizing prior art Sagnac interferometer systems, Oyster's construction does not "recapture" those prior art Sagnac systems, because under Oyster's construction claim 16 would not cover them. As the '500 patent describes these systems, "[a] data transmitter is a phase modulator ***for modulating counter-propagating light beams*** sent by a receiver round a loop." Ex. E, '500 patent at 1:49–51 (emphasis added). In other words, both beams of light are phase-modulated—i.e., are signal beams—and there is no reference beam as required by Oyster's proposed construction of "a receiver having an interferometer."

It is undisputed that Oyster's proposed construction accords with the plain meaning of interferometer, and this construction does not recapture any "disparaged" embodiments. Ciena has not justified limiting the interferometer of claim 16 to one specific configuration, excluding other ways of splitting and combining light to make measurements using interference. Accordingly, Ciena's construction should be rejected.

### E. "mode" ('500 Patent cl. 1, 16)

Ciena acknowledges that the construction of "mode" in the *Cisco* case is not binding on Oyster or on the Court in this action. Dkt. 116. While Ciena suggests that the Court should accord that construction "reasoned deference," Ciena's caselaw points to the proper limits of that deference. For example, *Finjan* indicates that decisions from outside this jurisdiction are entitled to a lesser degree of deference than decisions inside this jurisdiction. *Finjan, Inc. v. Symantec Corp.*, 14-CV-02998-HSG, 2017 WL 550453, at *3 (N.D. Cal. Feb. 10, 2017). Further, *Aircraft Tech.* emphasizes that this Court "has an independent obligation to construe the claims in dispute, and to render its own independent claim construction." *Aircraft Tech. Publishers v. Avantext, Inc.*, C 07-4154 SBA, 2009 WL 3817944, at *3 (N.D. Cal. Nov. 10, 2009). Respectfully, the court in *Cisco* erred in construing "mode," as explained in Oyster's opening brief and further below and as demonstrated specifically by the sworn declaration of Ciena's expert in this case, which was not before the court in *Cisco*.

#### 1. The Claim Language Supports Oyster's Proposed Construction

The claims (1) require a "first mode" and a "second mode," (2) require creating "phase-modulated" signals in one mode and "amplitude-modulat[ed]" signals in the other mode, and (3) require that the "first mode" and "second mode" occur at different times. Ex. E, '500 patent at claims 1, 16. Ciena conflates the requirement of the claims that the "first mode" and "second mode" occur at different times with the distinct question of whether amplitude modulation and phase *modulation* can ever occur simultaneously within one of those modes.

The '500 patent expressly describes and claims modes where the same light is both amplitude-modulated and phase-modulated, including a mode where amplitude-modulation and phase-

modulation occur simultaneously. Ex. E, '500 patent claim 19, Fig. 1, 2:43–45, 3:1–3, 3:25–28, 3:62–65, 4:36–42. As addressed above, Ciena seeks to exclude these modes taught by the '500 patent from the scope of the claims using improperly narrow constructions of the modulation-related claim terms. But at least if we assume that the Court (correctly) rejects Ciena's improper constructions of the modulation-related terms, it is possible to satisfy the first mode limitation (of claim 5, for example) with a mode that only phase modulates and the second mode limitation with a mode that amplitude modulates, but that also phase modulates. Ciena's brief highlights in red the amendment that added the requirement of "the first mode and the second mode occurring at different times." Dkt. 116 at 13:18; Ex. E, '500 patent at claim 1. But that added limitation simply requires that the two modes occur at different times. It says nothing at all about what modulations can occur ***within one of the modes itself***.

Ciena's argument based on conflating the requirement that "***modes***" occur at different times with a requirement that amplitude and phase ***modulation*** occur at different times also proves too much. If Ciena were correct in interpreting the limitation of claim 1 that the first and second modes occur at different times as a requirement that amplitude and phase modulation not occur simultaneously (even within the same mode), the same reasoning would apply to the very similar language of claim 17. The requirement in that claim that the first and second "transmission mode[s]" occur at separate times would imply that "phase modulating light" and "amplitude modulating light" could not both occur in the same mode. Ex. E, '500 patent at claim 17. But claim 19 expressly requires "the light is both amplitude-modulated and phase-modulated" within the same second alternate "transmission mode." Ex. E, '500 patent at claim 19. The existence of claim 19 confirms that the patentee did not intend the limitation requiring "modes" occur at different times also be a requirement that amplitude and phase modulation always occur at different times, in claim 17 or in claim 1.

As for Ciena's claim differentiation argument, Oyster does not dispute that the two modes have to differ from one another in some manner in order to satisfy the claims. But both are expressly called "modes" in the claims. The doctrine of claim differentiation does not require that two things that are referred to using the same word "mode" have completely unrelated forms of

7
**PLAINTIFF OYSTER OPTICS LLC'S REVISED REPLY CLAIM CONSTRUCTION BRIEF**

modulation, simply because one of them is arbitrarily called a "first mode" and the other is arbitrarily called a "second mode." The arbitrariness of these numerical labels is confirmed by comparing claim 1, which requires the first mode utilize phase modulation and the second mode utilizing amplitude modulation, with claim 16 which switches these roles. Ex. E, '500 patent at claims 1, 16.

### 2. The Specification Supports Oyster's Proposed Construction

Ciena's arguments based upon the specification place great weight on statements concerning "*[a]n* object of the present invention" or concerning potential benefits to security or backward compatibility. Dkt. 116 at 14–16. But such statements cannot override the express teachings in the specification of modes that both amplitude and phase modulate the same light. Ex. E, '500 patent claim 19, Fig. 1, 2:43–45, 3:1–3, 3:25–28, 3:62–65, 4:36–42. To limit the claims based upon these statements regarding "objects" or "benefits" and thereby exclude preferred embodiments from the claims would be legal error. *MBO Laboratories, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007) ("claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct" (citations omitted)).

Ciena's arguments concerning two "indistinguishable" modes likewise fail. Dkt. 116 at 15–16. The claims expressly require two modes, impose a number of limitations specific to one or the other mode, require that the occur at different times, and—in the case of claim 5—require switching between the modes. By their plain terms, the claims do not cover a system that always uses a single indistinguishable mode. Nothing in the law of claim construction suggests that it is necessary or appropriate to import further limitations into the claims, to ensure that the modes differ in one specific way, as opposed to differing in some other way that is also consistent with the express limitations of the claims.

As explained in Oyster's opening brief and confirmed by the declaration of Dr. Blumenthal, the specification of the '500 patent teaches a mode where both amplitude modulation and phase modulation are performed on the same light and where both are performed simultaneously. Dkt. 113 at 14–16. Ciena argues to the contrary based upon a statement in the specification that "[t]he transmitter thus produces an alternating amplitude-modulated and phase-modulated data

8
**PLAINTIFF OYSTER OPTICS LLC'S REVISED REPLY CLAIM CONSTRUCTION BRIEF**

stream, which can be read by a receiver of the present invention." Ex. E, '500 patent at 3:27–30. This statement immediately follows the two sentences:

> Alternately, the switch can be controlled by bit data in a packet of a packet-based data input stream. The bit data may be set for example to zero or one or two or three, so that the data contained in the packet is sent either via the first mode or via the direct second mode or the delayed second mode with no phase modulation or *the delayed second mode with phase modulation* as a function of the bit data.

Ex. E, '500 patent at 3:22–27. According to Ciena, the sentence about an alternating data stream is only referring to seven words toward the end of the sentence that precedes it ("the delayed second mode with phase modulation," italicized above), but the more natural reading of the statement about an alternating data stream is that it is referring to the process of switching between modes as a function of the bit data, i.e., to the preceding sentence as a whole.

While Ciena is correct to note that the '500 patent describes alternating signals with what Ciena describes as "*seriatim* modulation," the '500 patent also describes another way of combining amplitude and phase modulation within the same mode, shown in Dr. Blumenthal's annotated version of Figure 1 corresponding to "bit data" 11:



Ex. P, Blumenthal Declaration (with Dr. Blumenthal's purple annotations of Figure 1 emphasized to correct for blurriness due to image correction in original).

Dr. Blumenthal refers to this as the "amplitude and phase version of the second mode" and explains that in this mode "[d]uring an amplitude modulation mode, phase modulator controller 86 . . . phase modulates." Dkt. 50, Ex. I at 17:5–8, 20:11. In this mode, exactly the same signal "OP" is split and goes simultaneously to the "laser controller" and "PM controller" and hence to the laser and phase modulator.

It is true, as Ciena notes, that Dr. Blumenthal states that "[a]ny phase modulation that occurs in the second mode, i.e., when bit data is 11 (purple), occurs later; separate and apart from the amplitude modulation performed by pulsing the laser." (Dkt. 50, Ex. I at 30:15–17.) But here he is simply pointing out that phase modulation is being performed in the phase modulator upon the already-pulsed light that has left the laser. For any given photons of light, there will be a miniscule interval of time between when the light is formed in the laser and when it reaches (literally at the speed of light) the phase modulator. But that does not change the fact that pulsing the laser and phase modulating are occurring simultaneously, albeit on slightly different portions of the optical signal. Dr. Blumenthal himself referred to this purple annotated version of Figure 1 as showing "a signal that is ***simultaneously*** amplitude and phase modulated" (Ex. I at 21:12–13 (emphasis added)) in order to argue that the '500 patent failed to enable receiving a signal sent by this embodiment. Ex. I at 20–21; *see* Dkt. 113 at 14–16.

Ciena's attempts to distinguish claims 5 and 16 from claim 19 also fail. For example, Ciena argues that claims 1 and 16 require modulation "as a function of the electronic data stream" and that this is a difference from claim 19. Dkt. 116 at 17–18. But this is simply factually incorrect. Claim 16 says nothing about an "electronic data stream" or about modulation as a function of it. Ex. E, '500 patent at claim 16. Judge Payne's discussion of claim 19 fails to recognize that claim 16 has no concept of "data streams" or to explain why it is appropriate to import such a concept into that claim.

### 3. The Term "Mode" Was Not Narrowed in Prosecution as Ciena Contends

Ciena points to a petition to make special as purportedly disavowing claim scope. Dkt. 116 at 19; Ex. O at 473, 479. But this purported "disavowal" does nothing more than recite limitations of the initial versions of the claims and state those limitations are missing in certain prior art, without any discussion of why. In particular, nothing in the purported disavowal states that the claims require phase-modulating *only* during one time period and amplitude-modulating *only* during a different time period. Perhaps the applicant could have made such an argument, but it did not. Ex. O at 473, 479.

Likewise, the supplement to the petition to make special distinguished the prior art reference on the grounds that it does not "alternately send an amplitude-modulated signal and then a phase-modulated signal, but rather send a combined analog signal." Ex. O at 479–480. If the applicant were seeking to distinguish this prior art on the basis that the "combined analog signal" was not "amplitude modulation" or was not "phase modulation," the applicant could simply have said that and ended the response there. But the applicant did not dispute that the combined signal was amplitude modulated or that it was phase modulated. Indeed, to have done so would have excluded preferred embodiments, and in the case of the statements about pending claim 19 (which issued as claim 17) would have been inconsistent with the limitations of a child claim requiring that "during the second alternate transmission mode the light is both amplitude-modulated and phase-modulated." Ex. O at 479–480; Ex. L at 120. Rather, the argument made was that the prior art lacked the claimed first and second modes and different time periods. Ex. O at 479–480.

While it is true that prosecution history statements short of disavowal can "inform" claim construction as Ciena argues, Dkt. 116 at 20, nothing in the prosecution history of the '500 patent justifies importing new limitations in to the claims or excluding preferred embodiments. *See Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ("because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes.")

**PLAINTIFF OYSTER OPTICS LLC'S REVISED REPLY CLAIM CONSTRUCTION BRIEF**

In the *Personalized Media* case cited by Ciena, there were explicit statements in the specification about what the invention or the claims required. *Personalized Media Commun., LLC v. Apple Inc.*, 952 F.3d 1336, 1346 (Fed. Cir. 2020) (e.g., "encryption requires a digital signal" and "the prior art 'does not teach the encryption of an *entire* digital signal transmission'"). There are no such explicit statements about the invention or the claims. Rather, the statements in the June 11, 2003 office action response that Ciena rests its disclaimer argument on are all literally statements about what the prior art does disclose. Dkt. 116 at 21–22 ("Djupsjöbacka discloses . . ."; "Djupsjöbacka . . . transmits . . ."; "Djupsjöbacka shows . . . .") Nothing in these statements appears to narrow in any way the meaning of the term "mode."

A bare statement about what the prior art discloses does not disclaim anything. It is certainly not true that the mere mention of any feature present in a prior art reference acts to exclude that feature from the scope of the claims. To understand how, if at all, these statements are distinguishing the prior art from the claims or disavowing claim scope, one must look at the context in which the statement occurs. *Comp. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008) ("totality of the prosecution history" informs the disavowal inquiry).

Both the applicant and the examiner had reviewed the Djupsjöbacka reference and would have understood statements about the reference in the light of what the reference says. As Oyster explained in its opening brief and as Ciena does not dispute, Djupsjöbacka teaches that in its transmitter, a signal "is always simultaneously phase and amplitude modulated." Ex. N, Baker Decl. ¶ 27; Ex. M, Djupsjöbacka at 3:65–4:23. Indeed, "Djupsjöbacka, in contrast to the claims of the '500 Patent, teaches [only] a single manner of operation in which the signal to be transmitted is always simultaneously phase and amplitude modulated." Ex. N, Baker Decl. ¶ 29.

Both the applicant and the examiner would also have understood these statements about Djupsjöbacka in the context of the paragraphs in which they occur, and of the surrounding paragraphs, which Oyster discussed in detail in its opening brief, Dkt. 113 at 18:22–20:14, and to which Ciena can offer no substantive response, Dkt. 116 at 21:24–22:16.

Ciena cites to a statement that Judge Payne made, noting that Djupsjöbacka refers to "orthogonal polarization modes," which Judge Payne notes is "different from how the '500 Patent

uses the term "mode" to refer to a manner of operation." Dkt. 116 at 23:4–8; Ex. J at 24; *see* Ex. N, Baker Decl., ¶ 29 (explaining that Djupsjöbacka has only "a single manner of operation"). But this statement by Judge Payne was made in response to an argument not made in this case and has little bearing on the question of whether the patentee disclaimed all transmission of AM and PM signals at the same time, as Ciena now argues.[2]

As for Ciena's argument that without its narrowing construction the "breadth of the claimed modes would swallow one another" and the claims would read on the distinguished Djupsjöbacka prior art, this is plainly false. As Dr. Baker explained and Ciena does not dispute, "Djupsjöbacka, in contrast to the claims of the '500 Patent, teaches [only] a single manner of operation in which the signal to be transmitted is always simultaneously phase and amplitude modulated." The claims plainly require at least two modes, i.e., at least two "manners of operation" under Oyster's proposed construction, at different times. Accordingly, a system with only a single mode (a single "manner of operation") that is used at all times does not satisfy the claims. It is entirely unnecessary to import new limitations to distinguish the first and second modes as Ciena proposes.

### 4. The Extrinsic Expert Declarations Support Oyster's Construction

Faced with expert declarations—both from Oyster's expert and its own—that undercut its claim construction position, Ciena urges that they be disregarded. Dkt. 116 at 23:22–24:3. Ciena argues that Oyster's expert declaration would be disregarded as "conclusory," but in arguing this Ciena only cites to the declaration's concluding paragraphs, Dkt. 116 at 24:5-7, ignoring the 32 paragraphs of support and reasoning that lead up to it. Importantly, Ciena has not respond at all to the opinions from Dr. Baker that Oyster's briefing actually relies upon. Dkt. 113 at 17:26–18:4 (citing Ex. N, ¶¶ 27, 29).

Ciena criticizes Oyster for relying on opinions from Dr. Blumenthal relating to other terms of the '500 patent, from a declaration that predates Ciena's current position on the construction of "mode." But the statements that Oyster cites from Dr. Blumenthal are statements about what the

---

[2] Ciena cites, in a *see also* citation in its footnote 7, statements Oyster made in an *Inter Partes* Review response. Nothing in these high-level statements introducing the patent disavows anything or excludes the possibility of modes that involve both amplitude- and phase-modulation. (Ex. T.)

'500 patent discloses or what it enables. Some of those statements are omitted from Dr. Blumenthal's supplemental declaration and his discussion of "mode" (Ex. P), but the specification of the '500 patent has not changed, simply because Ciena is pursuing a new claim construction position. Ciena's criticism that Oyster does not address Dr. Blumenthal's declaration on "mode" (Ex. P at 24:3–32:27) is particularly ironic, because Ciena does not address it either, aside from one citation to the entire declaration and a "see also" reference. Dkt. 116 at 19:27, 24:5.

As for Ciena's argument that Oyster misrepresents Dr. Blumenthal's declaration, that is addressed in section III.E.2 above. While it is true that light in the "amplitude and phase version of the second mode" that Dr. Blumenthal annotates in purple passes through the phase modulator after it leaves the laser, in this mode the same light is both amplitude modulated and phase modulated, and amplitude modulation and phase modulation of light occur simultaneously. Further, Dr. Blumenthal refers to this mode as involving "a signal that is *simultaneously* amplitude and phase modulated" in the context of his argument that the specification does not enable a receiver for this signal. Ex. I at 21:12–13. Dr. Blumenthal's original declaration clearly supports Oyster's arguments concerning what is taught in the '500 patent specification.

## IV. CONCLUSION

For the foregoing reasons and for the reasons set forth in Oyster's opening brief, Oyster respectfully asks that the Court adopt Oyster's proposed constructions for the disputed claim terms.

Dated: May 16, 2022

Respectfully submitted,

**OYSTER OPTICS, LLC**

By: /s/ *Reza Mirzaie*
Marc A. Fenster (CA SBN 181067)
E-mail: mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
E-mail: rmirzaie@raklaw.com
Paul A. Kroeger (SBN 229074)
Email: pkroeger@raklaw.com
Neil A. Rubin (CA SBN 250761)
Email: nrubin@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025
Telephone:     310/826-7474
Facsimile:      310/826-6991

**Attorneys for Plaintiff
OYSTER OPTICS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on May 16, 2022 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first-class mail on this same date.

/s/ *Reza Mirzaie*