RUSS AUGUST & KABAT
Marc A. Fenster (CA SBN 181067)
mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
rmirzaie@raklaw.com
Paul A. Kroeger (CA SBN 229074)
pkroeger@raklaw.com
Neil A. Rubin (CA SBN 250761)
nrubin@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
(310) 826-7474 - Telephone
(310) 826-6991- Facsimile

*Attorneys for Plaintiff*
Oyster Optics, LLC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| OYSTER OPTICS, LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> CIENA CORPORATION, <br><br> *Defendant.* | Case No. 4:20-cv-02354-JSW <br><br> **PLAINTIFF OYSTER OPTICS, LLC'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF ON THE TERM MODE** |

Pursuant to the Court's Order dated July 1, 2022, Plaintiff Oyster Optics, LLC, hereby submits its Supplemental Claim Construction Brief directed to the two questions posed by the Court in its Order. The Court's two questions are:

1. "[H]ow, if at all, the undisputed phrase ["the controller in a second alternate mode amplitude-modulating the light from the laser as a function of the electronic data stream" meaning "the controller in a second alternating mode amplitude-modulating the light from the laser as a function of the same electronic data stream as in the first mode"] impacts the respective proposed constructions of the term mode?"

2. Whether the term 'mode' as used in claim 5 may require a different construction than the term "mode" as used in claim 16?

Dkt. No. 162 at 1. The Court also asked the parties to "address their views on whether or not the undisputed phrase impacts the persuasiveness of the *Cisco* court's analysis of the term 'mode.'"

**1. Summary Response – The '500 Patent Teaches Four Exemplary "Modes" Or "Manners of Operation" None of Which Are Effected By the Undisputed Phrase and "Mode" Should be Construed Consistently for both Claims 5 and 16**

Neither party's construction is impacted by the undisputed phrase which simply reflects the antecedent basis of "electronic data stream" as discussed below. The '500 Patent teaches four exemplary "Modes":

1. Phase Modulation Mode
2. Direct amplitude modulation
3. Delayed amplitude modulation <u>without</u> phase modulation
4. Delayed amplitude modulation <u>with</u> phase modulation

The three above-identified amplitude modulation modes are referred to in the '500 as "amplitude-modulated mode" or "amplitude-modulated signals." Oyster's proposed construction of "mode," "manner of operation," allows for all of these exemplary embodiments. In contrast, Ciena's construction "manner of operation during which at least one specific data signal is either amplitude modulated or phase modulated, but not both simultaneously" reads out at least one preferred

embodiment "delayed amplitude without phase modulation" and is otherwise erroneous for the reasons discussed in the prior briefing. That the mode operates on the electronic data stream in Claim 5, but not in Claim 16, has no impact on the proper construction of "mode."

The term "mode" should be construed the same for both Claim 5 and Claim 16. A different construction would only be warranted if the specification taught different uses of the term for the various different claims. The '500 Patent contains no such teaching.

### 2. The Undisputed Phrase Has No Impact On the Respective Proposed Constructions Of The Term "Mode"

#### a. The Undisputed Phrase Reflects The Antecedent Basis of "Electronic Data Stream"

The answer to Court's first question is the undisputed phrase should have no impact on the proposed construction of "mode." The undisputed phrase is simply a recognition of the antecedent basis "electronic data stream" as used in Claim 5. Claim 1 (which provides the relevant limitations of Claim 5 for this analysis) recites:

> An optical data transmitter comprising:
>
> a laser;
>
> a phase modulator for phase modulating light from the light source; and
>
> ***a controller having an input for receiving an electronic data stream***, the controller in ***a first mode*** controlling the phase modulator so as to ***create phase-modulated optical signals in the light from the laser as a function of the electronic data stream*** and the controller in a ***second alternate mode amplitude-modulating the light from the laser as a function of the electronic data stream***, the first mode and the second mode occurring at different times.

Thus, the undisputed phrase was meant only to recognize that the first mode and the second alternate mode operate on data contained in the same electronic data stream that was input to the controller, and nothing more. Nothing in this construction requires that the first mode or the second mode operate on the ***same data or optical signals*** contained within the data stream. Indeed, a requirement

1 that the same data or signals be used in both the first and second mode would be impossible given
2 the limitation that "the first mode and second mode occur[] at different times" which means that
3 different data or signals are used in each of the two different modes.

### b. The Undisputed Phrase Does Not Impact The Proper Construction Of "Mode"

That the same data stream input to the controller is used in both modes does not have any impact on what types of modulation or modulations is used in that mode—nothing in the claims requires the "function of the electronic data stream" to be the same in either mode. The claim only requires creating "phase-modulated optical signals" in the first mode and "amplitude-modulating the light from the laser as a function of the electronic data stream" in the second alternate mode. This requirement is consistent with the teaching of the specification. See '500 Patent at 2:41-46 ("The present invention thus permits a phase-modulated transmission mode or an amplitude-modulated transmission mode, or both a phase and amplitude modulated transmission mode, which can permit the transmitter to work with different types of receivers.").

Noteworthy, the specification teaches three exemplary types of amplitude-modulation that may be used in the second alternate mode: (1) direct amplitude modulation; (2) delayed amplitude modulation **without** phase modulation; and (3) delayed amplitude modulation **with** phase modulation. *See, e.g.*, '500 Patent at 2:63-3:3 ("In the second mode, the light may be amplitude modulated either in direct relation to an input data stream (known as the direct second or amplitude-modulated mode), or as a function of an output of a delayed-feedback exclusive-or gate having the electronic data stream as an input (known as the delayed second or amplitude-modulated mode). In the delayed second mode, the optical signal may or may not also be phase modulated."). '500 Patent at 3:14-18 ("Preferably, a switch, which may be composed of hardware or software, is provided to activate the first mode, the delayed second mode, or the direct second mode."); '500 Patent at 3:20-29 ("Alternately, the switch can be controlled by bit data in a packet of a packet-based data input stream. The bit data may be set for example to zero or one or two or three, so that the data contained in the packet is sent either via the first mode or via the direct second mode or the delayed second mode with no phase modulation or the delayed second mode with phase modulation as a function of

the bit data. The transmitter thus produces an alternating amplitude-modulated and phase-modulated data stream, which can be read by a receiver of the present invention."); *Id.* at 5:47-54 ("The present invention also provides a receiver for receiving optical signals, the optical signals including both phase-modulated optical signals and direct amplitude-modulated optical signals. The receiver includes an interferometer for reading the phase-modulated signals and a detector to read the direct amplitude-modulated optical signals. The receiver also may read delayed amplitude-modulated optical signals through the interferometer."); *Id.* at 3:61-64 ("The receiver can read a mixed optical signal of both phase-modulated and direct and delayed amplitude-modulated signals, with the direct amplitude-modulated signals being read off the third path."); *Id.* at 3:65-4:3 ("The receiver can be set by an operator to receive in one of the three modes, or can be switched to the various receive modes by a bit set in a packet.") *Id.* at 4:35-37("under certain circumstances a mixture of phase and amplitude modulation could be possible"). Oyster's proposed construction of "mode" as "plain and ordinary meaning, or, in the alternative, 'manner of operation,'" encompasses all three taught examples of the second alternate mode (as well as allows for other examples known in the art). The construction is not effected or changed by the undisputed phrase.

2. **"Mode" Should Be Afforded The Same Construction In Both Claim 5 and Claim 16**

"Mode" should be construed similarly for both Claim 5 and Claim 16. Standard claim construction principles provide that the same terms in different claims should be construed similarly absent clear teaching the specification or prosecution history. *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1377 (Fed. Cir. 2004) ("In other words, 'the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims.' *Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed.Cir.2001). If possible, this court construes claim terms 'in a manner that renders the patent internally consistent.'" (quoting *Budde v. Harley–Davidson, Inc.*, 250 F.3d 1369, 1379–80 (Fed. Cir. 2001). *Cf. Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1330 (Fed. Cir. 2009) ("'When different words or phrases are used in separate claims, a difference in meaning is

4

PLAINTIFF OYSTER OPTICS, LLC'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF

3714-002E

presumed."') (quoting *Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed.Cir.2005)). Here, there is no such clear teaching allowing for a different construction between the two claims, and mode should be afforded the same construction.

Claim 16 recites as follows:

> 16. A dual-mode optical transmission system comprising:
>
> a transmitter having a laser for transmitting amplitude-modulated signals in a first mode and phase-modulated signals in a second mode and a controller for switching an output of the laser between the first mode and the second mode, the second mode occurring at a different time than the first mode;
>
> an optical fiber connected to the transmitter; and
>
> a receiver having an interferometer being connected to the optical fiber.

The primary differences between Claims 5 and 16 are that: (1) Claim 16 claims both the transmitter and receiver, whereas Claim 5 claims only the receiver; (2) in Claim 16 the receiver has an interferometer; and (3) Claim 16 does not have the concept of an "electronic data stream." None of these differences point to clear intent to use the word "mode" differently between the claims.

Importantly, the specification teaches that the transmitter may transmit in the same four modes referenced above that can be used with the receiver: (1) phase modulation only; (2) direct amplitude modulation; (3) delayed amplitude modulation without phase modulation; and (4) delayed amplitude modulation with phase modulation. See '500 Patent at 2:41-46 ("The present invention thus permits a **phase-modulated transmission mode** or an **amplitude-modulated transmission mode**, or **both a phase and amplitude modulated transmission mode**, which can permit the transmitter to work with different types of receivers."). That Claim 16 is limited to use with an interferometer has no bearing on the term "mode" as a receiver with an interferometer could still satisfy all limitations of Claim 5.

Finally, the use of "electronic data stream" in Claim 5 does not change the definition of "mode" as between Claims 5 and 16. It only establishes the additional modes can meet the limitations of Claim 5 that would not meet the limitations of Claim 16. If anything, this difference

only reinforces the fact that Oyster's construction of "manner of operation" is clearly correct in that it can be used consistently with both claims, unlike Ciena's construction that introduces the concept of "data streams" into Claim 16.

**3. The Undisputed Phrase Provides No Support to the *Cisco* Court's Analysis**

The undisputed phrase has little relevance to the *Cisco* Court's analysis for largely the reasons set forth in Section 1 above. The *Cisco* Court's analysis remains faulty for the reasons set forth in Oyster's prior briefing.

**4. Conclusion**

For the reasons set forth above, as well in Oyster's prior briefing, Oyster's construction of "mode" should be adopted for the Court. Oyster is available for a further oral hearing on this matter (either in-person or via Zoom) if the Court would wish to discuss further.

RUSS AUGUST & KABAT

Dated: July 22, 2022        By:   */s/ P*aul A. Kroeger
                                  Marc A. Fenster
                                  Reza Mirzaie
                                  Paul A. Kroeger
                                  Neil A. Rubin

                                  *Attorneys for Plaintiff*
                                  OYSTER OPTICS, LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on July 22, 2022 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first-class mail on this same date.

/s/ *Paul A. Kroeger*