BLAIR M. JACOBS (admitted *pro hac vice*)
bjacobs@mckoolsmith.com
CHRISTINA A. ONDRICK (admitted *pro hac vice*)
condrick@mckoolsmith.com
JOHN S. HOLLEY (admitted *pro hac vice*)
jholley@mckoolsmith.com
McKool Smith, P.C.
1999 K Street NW, Suite 600
Washington, DC 20006
T: 202.370.8300
F: 202.370.8344

ALAN P. BLOCK (SBN 143783)
ablock@mckoolsmithhennigan.com
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
T: 213.694.1200;
F: 213.694.1234

Attorneys for Defendant
CIENA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OYSTER OPTICS, LLC,<br><br>         Plaintiff,<br><br>    vs.<br><br>CIENA CORPORATION,<br><br>         Defendant. | CASE NO. 4:20-cv-02354-JSW<br><br>**CIENA CORPORATION'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF ON THE TERM "MODE"** |

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................................ 1

II.   OYSTER'S FAULTY DESCRIPTION OF MODES AND THE '500 PATENT .............. 2

III.   CIENA'S ANSWERS TO THE COURT'S QUESTIONS ................................................ 4

    A.   Question 1: Does the Undisputed Phrase Impact the Respective Proposed Constructions of the Term "Mode"? ........................................................................ 4

    B.   Question 2: Should Mode Be Afforded The Same Construction In Both Claims 5 and 16? ................................................................................................................... 6

    C.   Question 3: What Are the Parties' Views on Whether or Not the Undisputed Phrase Impacts the Persuasiveness of the Cisco Court's Analysis of the Term "Mode"?..... 7

IV.   CONCLUSION ................................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aylus Networks, Inc. v. Apple Inc.*,
    856 F.3d 1353 (Fed. Cir. 2017) ................................................................................................ 5

*Baran v. Med. Device Technologies, Inc.*,
    616 F.3d 1309 (Fed. Cir. 2010) ................................................................................................ 5

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
    527 F.3d 1379 (Fed. Cir. 2008) ................................................................................................ 5

*Intel Corp. v. Qualcomm Inc.*,
    21 F.4th 801 (Fed. Cir. 2021) ................................................................................................... 3

*Inverness Med. Switz. GmbH v. Princeton Biomeditech Corp.*,
    309 F.3d 1365 (Fed. Cir. 2002) ................................................................................................ 6

*Nobel Biocare Servs. AG v. Instradent USA, Inc.*,
    903 F.3d 1365 (Fed. Cir. 2018) ................................................................................................ 5

*Omega Eng'g, Inc, v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ........................................................................................... 5, 6

*PPC Broadband, Inc. v. Corning Optical Communications RF, LLC*,
    815 F.3d 747 (Fed. Cir. 2016) .................................................................................................. 5

*PSN Illinois, LLC v. Ivoclar Vivadent, Inc.*,
    525 F.3d 1159 (Fed. Cir. 2008) ................................................................................................ 5

*Rheox, Inc. v. Entact, Inc.*,
    276 F.3d 1319 (Fed. Cir. 2002) ................................................................................................ 4

## TABLE OF EXHIBITS

| Exhibit | Document Description |
|---|---|
| 1 | Excerpts of Oyster's Supplemental Responses and Objections to Cisco's First set of Interrogatories dated May 14, 2021 in *Oyster Optics, LLC v. Cisco System, Inc.*, No. 2:20-cv-00211-JRG (E.D. Texas). |

I.  **INTRODUCTION**

The Court posed three questions regarding the term "mode." Rather than answer those questions with straightforward responses, Oyster rehashes its misguided argument that the asserted patent claims *must* be construed to capture *all* disclosed embodiments in U.S. Patent No. 6,665,500 (the '500 patent). This argument misstates the law and contradicts the clear disclaimer in the patent's prosecution history. The answers to the Court's questions confirm that the Eastern District of Texas' construction of the term "mode," the same construction proposed by Ciena, is the correct construction and should be adopted by this Court.

Before addressing the merits of Oyster's arguments, Ciena responds to the Court's questions as follows:

1. How, if at all, the undisputed phrase impacts the respective proposed constructions of the term "mode"

Ciena and Oyster agree that the undisputed phrase does not impact Ciena's proposed construction of "mode." Dkt. No. 138 at 3:4. The undisputed phrase and its antecedent basis, when read in the context of the full intrinsic record, confirm that a proper construction of mode must capture the inventive reality that for any given data stream at any point in time only *non-simultaneous* phase or amplitude modulation is allowed.

2. Whether the term "mode," as used in claim 5, may require a different construction than the term "mode," as used in claim 16.

Ciena and Oyster agree that "mode" should be provided the same construction for claims 5 and 16. *Id.* at 4:16. This should end the dispute concerning the proper construction of "mode" because the applicant's disclaimer during prosecution applies equally to *all claims* in the patent that use that term, including claims 5 and 16.

3. Views on whether or not the undisputed phrase impacts the persuasiveness of the *Cisco* court's analysis of the term "mode."

The undisputed phrase *bolsters the correctness* of the *Cisco* court's analysis of the term "mode." The parties agree that the undisputed phrase "reflects the antecedent basis of 'electronic data stream'" in the plain language of claim 1 and therefore claim 5. *Id.* at 1:16-18. The natural

result of this antecedent basis is that the *Cisco* court clearly considered the relevance of the same "electronic data stream," in construing the "mode" term consistently for claims 5 and 16.

Moreover, the *Cisco* court properly analyzed the "mode," "amplitude modulating," and "phase modulating" terms collectively. Ex. J (Dkt. No. 113-8 (*Cisco* claim construction Order)) at 16-18. This collective analysis resulted in the *Cisco* court including *data* in the definition of each term, even though the word "data" does not appear in claim 16. The *Markman* Order in this case similarly includes "data" in the definition of the modulating terms appearing in claim 16.

## II.   OYSTER'S FAULTY DESCRIPTION OF MODES AND THE '500 PATENT

In responding to the Court's questions, Oyster's Brief engages in misdirection with regard to the fourth mode. *See, e.g.*, Dkt. No. 138 at 1:22 (defining the "fourth" mode), 3:16-4:15 (conflating teachings from different embodiments in a lengthy string cite to support the faulty conclusion that each claim must capture every embodiment regardless of the prosecution history disclaimer and the different claim scopes).[1]

First, the fourth mode is not covered by claims 5 and 16 because of disclaimer. During prosecution, Oyster made clear that the '500 patent does not cover simultaneous amplitude and phase modulation of a *particular data stream*. Ex. O (Dkt. No. 116-2 (Applicant's Petitions to Make Special)) at 475, 479-80; Ex. L (Dkt. No. 113-10 (Amendment dated June 11, 2003)) at 122-24; *see also* Ex. J at 26 and citations therein (finding that Oyster "provided notice to the public" that the claimed mode "does not allow for both phase modulation and amplitude modulation to be performed ***simultaneously*** as to a ***particular data stream*** at a particular time") (emphasis added).

Second, Oyster ignores that asserted claim 5 requires an "operator-activated" switch and that only three modes (and not the fourth mode) are relevant to this type of switch. *Compare* Ex. E (Dkt. No. 113-5 ('500 patent)) at cl. 5 (requiring an operator-activated switch for switching between the first and second modes) *with* Dkt. No. 138 (Oyster's Opening Br.) (never mentioning

---

[1] Oyster's brief includes several other errors. For example, Oyster argues that claim 5 only covers the "receiver." Dkt. No. 138 at 5:13. Claim 5 is directed to a "transmitter." Ex. E at cl. 5. Oyster also argues Ciena's proposed construction "reads out" the *third* mode—"delayed amplitude <u>without</u> phase modulation." Dkt. No. 138 at 1:25-2:2. This is also incorrect.

an "operator-activated" switch). The operator-activated switch excludes the "fourth" mode—delayed amplitude modulation <u>with</u> phase modulation. Ex. E at 3:17-20 (operator-activated switching), 3:21-27 (bit-data activated switching), 3:34-38(bit-data activated" switch "provides carriers with more options for devising service levels"), 3:66-4:1 (systems with an operator-activated switch can have "one of the three modes"); Dkt. No. 138 at 1:17-22 (defining the modes). Oyster's brief (and Oyster's proposed construction of mode) wrongly attempts to capture concepts that were neither claimed nor disclosed in the specification. *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 809 (Fed. Cir. 2021) (courts "strive to capture the scope of the actual invention" without "allow[ing] the claim language to become divorced from what the specification conveys is the invention.").

Third, notwithstanding the *lack* of a switch in claim 16, Oyster argues that claim 16 covers fewer embodiments than claim 5 but never identifies what modes claim 5 covers that are not covered by claim 16. Dkt. No. 138 at 1:27-2:3, 5:26-27. Oyster's argument is thus unclear and undeveloped leaving Ciena unable to respond further. In any event, it is irrelevant as the prosecution disclaimer excludes the fourth mode.

Fourth, Oyster's brief makes a passing string-cite reference to a "mixed" signal embodiment. Dkt. No. 138 at 4:7-9. The mixed-signal embodiment, however, is merely a teaching that phase modulated signals can co-exist with amplitude modulated signals for *separate* data streams. Ex. E at 4:35-42 (the amplitude modulated signals and phase modulated signals carry data from different data streams). Oyster's brief omits this context when discussing the mixed signal embodiment. Dkt. No. 138 at 4:11-12. In any event, the *Cisco* court's construction of "mode" permits the disclosed "mixed" signal embodiment as detailed in Section III below.

Lastly, Oyster mischaracterizes Ciena's proposed construction as introducing "the concept of 'data streams' into claim 16." Dkt. No. 6:2-3. In reality, Oyster's own proposed constructions of "phase modulating" and "amplitude modulating," adopted by this Court, expressly include "data," which comes from a data stream and which would undoubtedly be included in the amplitude/phase modulated signals claimed in claim 16. So any argument that "data streams" are not included in claim 16 is simply incorrect. Moreover, the use of "data" in describing

transmitters and receivers is hardly surprising. As explained in this Court's recent *Markman* Order, "optical communication systems communicate **data** by modulating light…." Dkt. No. 134 at 3:1-2 (emphasis added; alterations omitted). For example, amplitude modulation is achieved by feeding "**an electronic data stream**" to "a laser amplitude modulator." *Id.* at 3:7-8 (emphasis added). "Modulation is the process of encoding the **data** that is to be communicated in the light wave," for example, encoding the data in the light wave's amplitude or phase. *Id.* at 3:2-4. There is thus nothing inappropriate with a construction introducing the concept of data streams into a claimed optical transmission system and Oyster's attempt to ignore the full context of the claimed optical transmission systems should be rejected.

### III. CIENA'S ANSWERS TO THE COURT'S QUESTIONS

#### A. Question 1: Does the Undisputed Phrase Impact the Respective Proposed Constructions of the Term "Mode"?

The undisputed phrase does not impact Ciena's proposed construction of "mode." As Oyster concedes, the undisputed term is "a recognition of the antecedent basis 'electronic data stream' as used in claim 5." Dkt. No. 138 at 2:12-13. This recognition still permits (i) "a phase-modulated transmission mode," i.e., the first mode without mixing, (ii) "an amplitude-modulated transmission mode," i.e., the direct second mode or the delayed second mode without phase modulation, and (iii) "both a phase and amplitude modulation transmission mode," i.e., the first mode mixed with unrelated data in amplitude form. *Id.* at 3:10-13 (citing Ex. E at 2:41-46).

Rather than responding to the Court's question directly, Oyster ignores the '500 patent's plain teachings and argues that adopting Ciena's construction of "mode" is problematic because it leaves the "fourth" mode entirely unclaimed. Dkt. No. 138 1:23-2:5, 4:12-15, 5:25-6:3. Oyster is incorrect for at least two reasons. First, the "fourth" mode—delayed amplitude modulation *with* phase modulation—is expressly not captured by the operator-activated switch embodiment and is thus irrelevant. Ex. E at 3:17-20; *see also id.* at 3:65-4:3 (describing an operator set receiver operating "*in one of* **three** *modes*"). Moreover, the "fourth" mode was contemplated by invalid claim 6 and Oyster cannot properly rely upon a cancelled claim to recapture disclaimed subject matter. *See Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325, (Fed. Cir. 2002) (ruling that the

scope of the patent in suit did not cover an embodiment expressly disclosed in the written description because the claim covering that embodiment was cancelled).  Furthermore, "[i]t is often the case that different claims are directed to and cover different disclosed embodiments. The patentee chooses the language and accordingly the scope of his claims."  *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008); *see also Nobel Biocare Servs. AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1381 (Fed. Cir. 2018) (same).  Oyster's choice to expressly capture less than all four modes in claim 5 is not problematic because some "disclosed embodiments may be within the scope of other allowed but unasserted claims."  *PSN Illinois, LLC v. Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1166 (Fed. Cir. 2008). This is fully consistent with Ciena's proposed construction.

      Oyster's argument that the "fourth" mode must be captured by this Court's construction of mode relies upon incorrect attorney argument concerning the operator-activated switching embodiment.  Dkt. No. 138 at 5:25-27.  Oyster provides zero analysis to support this conclusion and the claim language refutes it.  At any rate, the law is clear that not every claim in a patent must capture every embodiment.  *PPC Broadband, Inc. v. Corning Optical Communications RF, LLC,* 815 F.3d 747, 755 (Fed. Cir. 2016) (rejecting the proposition that "each and every claim ought to be interpreted to cover each and every embodiment"); *Baran v. Med. Device Technologies, Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010) ("It is not necessary that each claim read on every embodiment.").  The bottom line is that claim 5 plainly does not cover embodiments with the fourth mode—that mode is taught only in conjunction with the bit-data switch.  Ex. E at 3:20-27.

      Second, prosecution history disclaimer confirms the proper construction of mode for all claims, including claims 5 and 16.  *See, e.g.*, Ex. J at 26 (Oyster "provided notice to the public" that the claimed mode "does not allow for both phase modulation and amplitude modulation to be performed ***simultaneously*** as to a ***particular data stream*** at a particular time") (emphasis added); *see Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003); *see also Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017).

Viewing the Court's question in light of Oyster's proposed construction, the undisputed phrase precludes embodiments Oyster seeks to recapture. As explained above, Oyster's brief cites the "mixed" signal embodiment (Dkt. No. 138 at 4:7-9, 4:11-12) to argue that Oyster's construction captures the "fourth mode." *Id.* at 4:12-14. But that embodiment occurs when "amplitude modulated signals ***not related to the input optical data stream*** [are] transmitted during the secure phase modulation mode without necessarily affecting security." Ex. E at 4:35-42 (emphasis added).

The *Cisco* court's construction proposed by Ciena, unlike Oyster's proposed construction, aligns with the prosecution history by fairly allowing for the "mixed" signal embodiment while also precluding Oyster from recapturing disclaimed subject matter. For instance, in the first mode, i.e., the phase modulation mode, "at least ***one specific data signal*** is … phase modulated," but not "simultaneously" amplitude and phase modulated. At the same time, another data signal, not related to the *specific* data signal, can be amplitude modulated. Ex. E at 4:35-42.

**B.     Question 2: Should Mode Be Afforded The Same Construction In Both Claims 5 and 16?**

The parties agree that "mode" should be provided with the same construction for claims 5 and 16. Dkt. No. 138 at 4:17. This comports with legal precedent. *See, e.g.*, *Inverness Med. Switz. GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1371 (Fed. Cir. 2002) ("A claim term used in multiple claims should be construed consistently"); *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003).

Despite the parties' agreement, Oyster's response to this question raises additional issues that require a response. Contrary to Oyster's contention, claim 5 is expressly limited to an operator-activated switch. *Compare id.* at 5:12-15 (listing three "differences") *with* Ex. E at cl. 5 (requiring the switch to be "operator-activated."). This requirement, which Oyster fails to address, is critical because the invalid bit-data activated switch embodiment includes "more options" than the claimed "operator-activated" switch. Ex. E at 3:17-20 (listing the three modes for the operator-activated switch), 3:21-27 (listing the four modes for the bit-data activated switch), 3:34-38 (explaining that the bit-data activated switch provides "more options").

Oyster's brief bizarrely suggests that "additional modes can meet the limitations of claim 5 that would not meet the limitations of claim 16." Dkt. No. 138 at 5:26-27. Oyster provides no analysis supporting their suggestion or its relevance to the construction of "mode," so Ciena cannot respond further. But, as explained above and in Ciena's original "mode" briefing, Oyster disclaimed the fourth mode to the extent Oyster is interpreting that mode to cover simultaneously amplitude and phase modulating the same data signal. *See, e.g.*, Dkt. No. 116 at 18:12-23:20; *see also* Ex. J at 26 (Oyster "provided notice to the public" that the claimed mode "does not allow for both phase modulation and amplitude modulation to be performed *simultaneously* as to a *particular data stream* at a particular time") (emphasis added).

Lastly, Ciena does not contend that the asserted claims do not cover "delayed amplitude *without* phase modulation," as Oyster now argues. Dkt. No. 138 at 1:25-2:2; *see also* 5:25-27. To the contrary, Ciena's position has always been that the asserted claims do not cover the fourth mode, "delayed amplitude *with* phase modulation," to the extent that embodiment is interpreted to capture simultaneously amplitude and phase modulating the same data signal—a concept outside the scope of claim 5's plain language and outside the scope of claims 5 and 16 because of Oyster's prosecution history disclaimer.

        C.        **Question 3: What Are the Parties' Views on Whether or Not the Undisputed Phrase Impacts the Persuasiveness of the Cisco Court's Analysis of the Term "Mode"?**

The undisputed phrase *strengthens* the persuasiveness of the *Cisco* court's analysis. Both parties agree that the undisputed phrase "simply reflects the antecedent basis of 'electronic data stream'…." Dkt. No. 138 at 1:16-17; *see also id.* at 2:9-13. The parties' agreement recognizes that the plain language of the claims, including the antecedent basis that underpins the undisputed phrase, was unquestionably in front of the *Cisco* court when it issued its "mode" construction.

The *Cisco* court's analysis confirms that the Court was aware of the same data stream requirement when the mode term was construed. Under the *Cisco* court's construction, amplitude modulation and phase modulation can occur on different parts of the same electronic data stream *so long as the different modulations occur at different times*. Ex. J (Dkt. No. 113-8 *Cisco* claim construction Order)) at 25-26. For example, consider a data stream consisting of eight bits—

00001111—being fed serially into a dual-mode transmitter.  The *Cisco* court's construction reads on the dual-mode transmitter performing phase modulation on the portion of the electronic data stream consisting of the bits '0000' during a first time period and performing amplitude modulation on the portion of the electronic data stream consisting of the bits '1111' during a second time period different from the first time period.

As the *Cisco* court explained, the parties disputed "whether the patentee disclaimed modulating *a single data stream* using both amplitude modulation and phase modulation *at the same time*."  Ex. J (Dkt. No. 113-8 *Cisco* claim construction Order) at 25 (emphasis original). The *Cisco* court properly found that the patentee disclaimed simultaneous phase modulation and amplitude modulation of "*a particular data stream.*"  *Id.* at 26.

This disclaimer, of course, applies to both claims 5 and 16.  Ex. L at 118-20 (amending claims 1, 5, and 16), 122-23 (disclaiming "simultaneous transmission of optical signals in … AM and PM mode at the same time" for "claims 1 to 11"), 123-24 (disclaiming "simultaneous AM/PM transmission" for claim 18 which was re-written as claim 16); *see also* Ex. J at 26 (finding disclaimer without limitation).  Indeed, the *Cisco* court's "mode" construction indisputably applied to each asserted claim in that case with the term "mode." *E.g.,* claims 1, 2, 4, 5, 16, 17 and 19 of the '500 patent.  *Compare* Ex. J at 34 (dated May 4, 2021) *with* Ex. 1 (Excerpts of Oyster's Supplemental Responses to Cisco's first set of Interrogatories) at 6 (May 14, 2021 Supplement contending that Cisco infringes claims 1, 2, 4, 5, 16, 17 and 19 of the '500 patent).  Thus, the undisputed phrase only *bolsters* the persuasiveness of the *Cisco* court's analysis providing the same construction to "mode" in both claims 5 and 16.

### IV. CONCLUSION

For the reasons set forth above, as well in Ciena's prior briefing, the *Cisco* court's construction of "mode" should be adopted.  Ciena is available for a further oral hearing on this matter (either in-person or via Zoom) if the Court would wish to discuss further.

DATED: August 5, 2022        McKool Smith, P.C.

                 By:  /s/ Blair M. Jacobs
                    Blair M. Jacobs
                    *Attorney for Defendant Ciena Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on August 5, 2022 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

  /s/ *Blair M. Jacobs*