BLAIR M. JACOBS (admitted *pro hac vice*)
bjacobs@mckoolsmith.com
CHRISTINA A. ONDRICK (admitted *pro hac vice*)
condrick@mckoolsmith.com
JOHN S. HOLLEY (admitted *pro hac vice*)
jholley@mckoolsmith.com
McKool Smith, P.C.
1999 K Street NW, Suite 600
Washington, DC 20006
T: 202.370.8300
F: 202.370.8344

ALAN P. BLOCK (SBN 143783)
ablock@mckoolsmithhennigan.com
300 South Grand Avenue, Suite 2900
Los Angeles, California 90071
T: 213.694.1200;
F: 213.694.1234

Attorneys for Defendant
CIENA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OYSTER OPTICS, LLC,

Plaintiff,

vs.

CIENA CORPORATION,

Defendant.

CASE NO. 4:20-cv-02354-JSW

**CIENA CORPORATION'S SUR-REPLY SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF ON THE TERM "MODE"**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. ALL OF OYSTER'S ARGUMENTS ERRONEOUSLY HINGE ON A FINDING OF NO DISCLAIMER .......... 1

III. OYSTER'S ARGUMENTS ALSO HINGE ON AN ERRONEOUS CLAIM THAT THE PATENTEE'S INVENTION COVERS ALL DISCLOSED EMBODIMENTS .......... 1

IV. CONCLUSION .......... 4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ePlus, Inc. v. Lawson Software, Inc.*,
789 F.3d 1349 (Fed. Cir. 2015)....................................................................................... 3

*Fiber, LLC v. Ciena Corp.*,
2017 WL 3896443 (D. Col. Sept. 6, 2017), *aff'd*, 792 Fed. Appx. 789 (Fed. Cir. 2019) ................................................................................................................... 3

*PSN Illinois, LLC v. Ivoclar Vivadent, Inc.*,
525 F.3d 1159 (Fed. Cir. 2008)....................................................................................... 4

*Rheox, Inc. v. Entact, Inc.*,
276 F.3d 1319 (Fed. Cir. 2002).................................................................................. 3, 4

*Seachange Int'l, Inc. v. C–COR, Inc.*,
413 F.3d 1361 (Fed. Cir. 2005)....................................................................................... 3

## I. INTRODUCTION

Oyster's arguments are premised on the faulty assumption that no disavowal occurred during prosecution. Rather than addressing this elephant in the room, Oyster makes the nonsensical argument that the patentee always intended claim 6 to cover a mode with simultaneous phase and amplitude modulation, and therefore claim 5 captures such a mode. But Oyster's wishes are beside the point. The Patent Office disagreed and cancelled claims 1 and 6 and this materially impacts claim construction. Oyster cannot now capture, through confusing out-of-context arguments, claim scope not encompassed by the asserted claims or scope that was disavowed and/or rejected by the USPTO. The claims presently asserted in this case have a claim scope that renders the much-discussed fourth mode irrelevant to the Court's questions.

## II. ALL OF OYSTER'S ARGUMENTS ERRONEOUSLY HINGE ON A FINDING OF NO DISCLAIMER

Oyster's criticisms of Ciena's and the *Cisco* court's construction of "mode" all rely upon a finding of no disavowal. Dkt. 140 at 1:20-21, 4:17-5:5. Oyster offers no new arguments undermining the applicant's clear and unambiguous disavowal or how the agreed construction compels that conclusion.[1] Ciena thus incorporates its prior briefing and argument at the *Markman* hearing, each demonstrating Oyster's disavowal.

## III. OYSTER'S ARGUMENTS ALSO HINGE ON AN ERRONEOUS CLAIM THAT THE PATENTEE'S INVENTION COVERS ALL DISCLOSED EMBODIMENTS

Oyster's arguments lean heavily on the mistaken contention that its interpretation of the fourth mode must be captured by a construction of mode. If this contention is incorrect, Oyster's arguments fail. A fair examination of the full prosecution history confirms that Oyster's arguments regarding the fourth mode are unsupported by the intrinsic record. Claims 1-19 issued after the disavowal during original prosecution. Thereafter, during IPR proceedings, the USPTO

---

[1] Oyster's Reply rehashes its erroneous characterizations of the Petition to Make Special and contends this Court's constructions of "phase modulated" and "amplitude modulated" confirm no disclaimer with regard to "mode." Dkt. 140 at 4:17-5:5. Oyster selectively quotes the Petition omitting key criticisms of the prior art that confirm the correctness of the *Cisco* court's disavowal finding when read in conjunction with the additional statements of disavowal elsewhere in the prosecution history. *See, e.g.*, Dkt. 116, Ex. O at 474-75, 479-80. Oyster likewise omits that the *Cisco* court collectively analyzed these three terms and found disavowal using the same construction for the amplitude and phase modulated terms that this Court has adopted.

cancelled invalid claims 1, 2, 4, 6-9, and 17-19. While the IPR was not before the *Cisco* court during claim construction, Oyster repeats its same previously-rejected arguments to this Court, completely ignoring the impact of the cancellation. Indeed, Oyster's Reply crosses the boundaries of fairness by arguing that the scope of the cancelled claims—claim scope Oyster has no right to—gives this Court reason to broadly construe "mode" so that all claims cover all disclosed embodiments in the patent and even an undisclosed one (simultaneous phase and amplitude modulation of the same light using the same input data signal). Oyster's arguments seek to abrogate both its earlier disavowal and the cancellation of claims.

Rather than addressing the reason ***why*** the agreed upon construction for "electronic data stream" in claim 5 has no impact, Oyster embarks on a misguided argument that it is entitled to broaden the asserted claims to recapture every embodiment disclosed in the specification. Dkt. 140 at 2:10-4:16. Specifically, Oyster argues cancelled dependent claim 6 (requiring a "bit-data activated" switch) enlarges the scope of "mode" and thus the scope of dependent claim 5 (requiring an "operator-activated" switch). Oyster contends this should occur because both claims depend from cancelled independent claim 1. *See, e.g.,* Dkt. 140 at 1:16-18, 3:16-19. The fallacy with Oyster's argument is that it ignores the patent applicant's express choice to have claim 5 cover *less* than all disclosed embodiments and to claim a different embodiment than cancelled claim 6. The specification teaches that the "operator-activated" switch of claim 5 supports only three of the four disclosed modes. Dkt. 113-5 (Ex. E) at 3:17-20, 3:66-41. The specification further teaches that only the "bit-data activated" switch of cancelled claim 6 supports all four modes and, contrary to Oyster's characterization of the fourth mode, the fourth mode[2] is described as "the delayed second mode with phase modulation as a function of the bit

---

[2] For clarity regarding the phase and amplitude "fourth mode," Oyster once again argues that the fourth mode includes *simultaneous* phase and amplitude modulation of "the same light using the same data bits" despite the absence of any such disclosure. Dkt. 140 at 2:16-17. Ciena disagrees with this characterization for the reasons provided in prior briefing and at the *Markman* hearing because, for example, Oyster's primary support for this "fourth mode" is a misquoted sentence from Dr. Blumenthal's declaration. *See, e.g.*, Dkt. 116 at 24:21-25:13.

The specification does disclose, however, mixing amplitude and phase from *different* data streams—namely one embodiment with serial amplitude modulation and then phase modulation (or vice-versa) which is the "bit data activated" switch fourth mode (as discussed in the paragraph this footnote originates from) *and* another embodiment with *mixed* data from *unrelated* sources

data." *Id*. at 3:21-27, 44-48. The specification further discloses that in this fourth mode a delayed amplitude modulated signal is "sent in a pulsed fashion" (*id*. at 5:51-52) and is then followed in time by a phase modulated signal where the laser is no longer pulsed and instead "the laser emits a constant wavelength, non-pulsed light" that is phase modulated (*id*. at 5:34-37). Oyster's argument is a clear attempt to evade the cancellation of invalid claim 6 and improperly import the fourth mode into surviving claim 5. The law repudiates Oyster's argument for the reasons discussed below and in prior briefing.

First, Oyster's argument regarding claims 1 and 6 rests on a legally erroneous claim differentiation argument. Cancelled claims ***cannot*** be used in a claim differentiation analysis. *Fiber, LLC v. Ciena Corp.*, 2017 WL 3896443 at *7, n.5 (D. Col. Sept. 6, 2017), *aff'd*, 792 Fed. Appx. 789 (Fed. Cir. 2019) ("A cancelled claim is *void ab initio* and cannot be relied upon for claim differentiation purposes.") (citing *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1346 (Fed. Cir. 2013)); *see also ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1356 (Fed. Cir. 2015) ("[P]reviously conferred" rights in a patent claim "have ceased to exist" when the PTO cancels a claim during reexamination).[3] Oyster's arguments regarding cancelled claim 1, cancelled claim 6, or any other cancelled claim (e.g., claims 17-19) thus fail.

Second, Oyster cannot rely on cancelled claim 6 or any other claim to negate the applicant's disclaiming of *simultaneous* phase and amplitude modulation during prosecution:

> Although we recognize that an interpretation excluding a preferred embodiment "is rarely, if ever, correct and would require highly persuasive evidentiary support" ***where the prosecution history requires a claim construction that excludes some but not all of the preferred embodiments, such a construction is permissible and meets the standard of "highly persuasive evidentiary support."*** This follows from our precedent that "[t]he prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution."

*Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1327 (Fed. Cir. 2002) (emphasis added) (citations omitted). Oyster's brief weakly attempts to distance this case from *Rheox,* contending that the Federal Circuit there held that a patentee (and not the Patent Office) "clarifi[ed] the invention" by

---

(that is, for example, the electronic data stream being phase modulated and other unrelated data being amplitude modulated). *See, e.g.*, Dkt. 116 at 17:13-18:11; Dkt. 139 at 3, 4, 6. Ciena's proposed construction permits both of these embodiments.

[3] Further, claim differentiation is a rule of thumb that does not trump the specification or prosecution history. *Seachange Int'l, Inc. v. C–COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005).

canceling claims during prosecution. Dkt. 140 3:5-8. Oyster's argument draws a distinction without a difference. *Rheox* involved claims cancelled after an initial and final rejection based on a prior art reference and interview with the examiner, not some innocuous clarification as Oyster suggests. *Rheox*, 276 F.3d at 1323-24, 1326. Here, just as in *Rheox*, a cancellation of claims by the Patent Office clarified the scope of the invention by rejecting the overly broad concepts of claims 1 and 6. Oyster cannot fairly now recapture subject matter cancelled during prosecution.

Third, Oyster mischaracterizes Ciena's argument as *requiring* the Court to disregard claim 6 (something Ciena did not argue). *Compare* Dkt. 139 at 4-5 *with* Dkt. 140 3:1-2 and 3:23-4:16. Oyster's strawman argument fails because Ciena is merely arguing that the cancellation of claims 1 and 6 and disclaimer of simultaneous amplitude and phase modulation must factor into this Court's assessment of the proper meaning of "mode." In any event, Oyster provides no legal support for its argument that a voluntary cancellation in response to a final rejection is more meaningful than the PTAB's cancellation of claims in a final determination of invalidity based on prior art. Dkt. 140 at 3:2-16. If anything, the PTAB's cancellation of specific claims and *not others* provides highly persuasive evidentiary support that claims 1, 6, and 19 cover embodiments not covered by claim 5. *PSN Illinois, LLC v. Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1166 (Fed. Cir. 2008) ("[C]ancelled claims may provide 'probative evidence' that an embodiment is not within the scope of an asserted claim.").

## IV. CONCLUSION

For the reasons set forth above, as well in Ciena's prior briefing, the *Cisco* court's construction of "mode" should be adopted and the agreed upon construction of electronic data stream only serves to support the correctness that construction.

DATED: August 19, 2022

McKool Smith, P.C.

By: */s/ Blair M. Jacobs*
Blair M. Jacobs
*Attorney for Defendant Ciena Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on August 19, 2022 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ *Blair M. Jacobs*